# UNITED STATES *v.* ISTHMIAN STEAMSHIP CO.

No. 285.   Argued February 25, 1959.—Decided April 27, 1959.

*Ralph S. Spritzer* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Doub, Samuel D. Slade, Leavenworth Colby* and *Seymour Farber.*

*Clement C. Rinehart* argued the cause for respondent. With him on the brief was *Walter P. Hickey.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The principal question presented in this case is whether in an action under the Suits in Admiralty Act, 41 Stat. 525, as amended, 46 U. S. C. § 741 *et seq.,* the United States may defend by pleading against the libelant a claim arising out of an unrelated transaction.

In 1953, the S. S. *Steelworker,* a ship belonging to the respondent, Isthmian Steamship Company ("Isthmian"), carried certain cargo for the United States. Isthmian submitted a bill of $116,511.44 for this service. The United States paid $1,307.68 but withheld the remaining $115,203.76. This sum was said to have been applied to an alleged indebtedness of Isthmian to the United States which was claimed to have arisen in 1946, when the United States, acting through the War Shipping Administration, chartered out to Isthmian eight vessels on a bare boat basis. Some disagreement arose over the amount of charter hire due and the United States asserted that Isthmian owed $115,203.76 for additional charter hire for the period from May 1, 1946, to July 31, 1948. The S. S. *Steelworker* was not one of the boats involved in the 1946 transaction.

Isthmian filed a libel in the United States District Court for the Southern District of New York alleging that the United States owed Isthmian $116,511.44 for cargo transported on the S. S. *Steelworker;* that Isthmian had presented a bill for that amount; and that the United States had failed and refused to pay $115,203.76 which was due and payable.[1] Isthmian made no reference whatsoever to the parties' dispute over additional charter hire for the 1946–1948 period.

The United States filed an answer admitting that Isthmian had submitted a claim for $116,511.44; denying that the United States had not paid $115,203.76; and further alleging that this sum had been "paid" by application against an indebtedness of Isthmian to the United States for additional charter hire. Shortly before this answer was filed, the United States filed a cross-libel against Isthmian seeking recovery of the additional charter hire of $115,203.76. After filing the answer, the United States moved to consolidate its cross-libel with the original libel on the ground that the additional charter-hire claim was dispositive of both libels.

Isthmian excepted to the answer of the United States on the ground that the defensive matter pleaded therein did not arise "out of the same contract, cause of action or transaction for which the libel was filed." Isthmian moved that the excepted matter be stricken and asked "judgment on the pleadings."

---

[1] Isthmian first attempted to recover the unpaid portion of the freight bill by a suit in the Court of Claims. The United States moved to dismiss that suit because Isthmian's claim was said to have been maritime in nature, thus giving the District Courts exclusive jurisdiction under the Suits in Admiralty Act. 46 U. S. C. § 741 *et seq.* The Court of Claims dismissed Isthmian's suit. *Isthmian Steamship Co.* v. *United States,* 131 Ct. Cl. 472, 130 F. Supp. 336. Before that dismissal, Isthmian filed the instant proceeding.

The District Court held that the answer setting forth the withholding and application of the $115,203.76 did not set forth a defense of payment but rather was a claim of setoff arising from a separate transaction.[2] The District Court then held that setoffs arising from distinct transactions could not be asserted in admiralty and sustained Isthmian's exceptions. Since there was no longer any common issue, consolidation of the libel and cross-libel was denied and Isthmian was awarded a decree *pro confesso*. 134 F. Supp. 854. The Government's cross-libel is still pending.

The District Court's final decree awarded interest at 4% per annum on $115,203.76 from the date of the filing of the libel to the day of decree. The District Court further ordered that interest at 4% should run from the date of the decree until it was paid. This second 4% was to be computed on a sum which included the basic recovery, the costs awarded and the interest which had run from the date of the libel to the date of the decree.

On appeal, the Court of Appeals for the Second Circuit affirmed. 255 F. 2d 816. The Court of Appeals relied on the authority of a case decided at the same time as the instant case, *Grace Line, Inc.,* v. *United States,* 255 F. 2d 810, wherein it was held that withholding and applying did not constitute "payment," but, rather, setoff. Since the withholding and applying in the instant case did not arise out of the same transaction on which the libel was based, the Court of Appeals held it was not cognizable in admiralty. The award of interest was also upheld. We granted certiorari principally to consider the question posed at the outset of this opinion. 358 U. S. 813.

---

[2] See generally, as to the nature of setoff, Loyd, The Development of Set-Off, 64 U. of Pa. L. Rev. 541 (1916). As to the distinctions between setoff and recoupment see Shipman, Common Law Pleading (3d ed. 1923), §§ 209, 210; Waterman on Set-Off, Recoupment, and Counter Claim (2d ed. 1872), § 464.

The Government presses a threshold argument which, if accepted, would obviate the need to reach the question posed at the outset of this opinion. While admitting the correctness of Isthmian's bill, the Government claims that the bill has been "paid" and argues that the true nature of the dispute between the parties concerns charter hire despite the fact that Isthmian's libel does not mention the charter-hire dispute. We agree with the courts below that the Government's defense is not properly one of payment.

The Government relies upon the Act of March 3, 1817, 3 Stat. 366, which now appears in similar form as Section 305 of the Budget and Accounting Act of 1921, 42 Stat. 24, 31 U. S. C. § 71. This section provides that the General Accounting Office shall settle and adjust all claims and demands by or against the Government. This is said to mean that when the General Accounting Office administratively sets one claim off against another that is the same as payment. But recognizing the Government's long-standing power to set off is far different from finding that the Government's setoff is "payment" which enables the Government to plead in admiralty foreign and unrelated transactions. See *United States* v. *Munsey Trust Co.,* 332 U. S. 234, 239; *McKnight* v. *United States,* 13 Ct. Cl. 292, 306, affirmed, 98 U. S. 179; *Climatic Rainwear Co.* v. *United States,* 115 Ct. Cl. 520, 88 F. Supp. 415, 418. In other situations, the claim of withholding and applying has traditionally been treated as setoff. *Virginia-Carolina Chemical Co.* v. *Kirven,* 215 U. S. 252, 257–258; *Merchants Heat & Light Co.* v. *Clow & Sons,* 204 U. S. 286, 289–290 (a recoupment case); *Scammon* v. *Kimball,* 92 U. S. 362, 367; *United States* v. *Eckford,* 6 Wall. 484. See also 3 Williston, Contracts (rev. ed. 1936), § 887E. In this context, "payment" connotes tender by the debtor with the intention to satisfy the debt

coupled with its acceptance as satisfaction by the creditor. See *Luckenbach* v. *McCahan Sugar Co.*, 248 U. S. 139, 149; *Bronson* v. *Rodes,* 7 Wall. 229, 250; *Sheehy* v. *Mandeville,* 6 Cranch 253, 264; *United States* v. *J. A. J. Const. Co.*, 137 F. 2d 584, 586.

To consider withholding and applying the equivalent of "payment" would have strange consequences. In *Grace Line, Inc.,* v. *United States, supra,* for example, the Government had a claim against the carrier which had become time-barred. The carrier performed some unrelated services for the United States and then brought suit to collect. The Government claimed that it had "paid" by withholding the money and applying it to the time-barred claim. Thus, the Government attempted to use its unique concept of "payment" to revive a totally unrelated time-barred claim.

We can understand the Government's desire to litigate all of its disputes with Isthmian in one lawsuit, but that is no warrant for abandoning the traditional meaning of the defense of payment.[3]

We therefore reach the question posed at the outset. Section 3 of the Suits in Admiralty Act, 46 U. S. C. § 743, provides that suits against the United States under

---

[3] The Government cites several cases, *e. g., United States* v. *New York, N. H. & H. R. Co.*, 355 U. S. 253; *Alcoa Steamship Co.* v. *United States*, 338 U. S. 421, and *Wabash R. Co.* v. *United States*, 59 Ct. Cl. 322, affirmed *sub nom. United States* v. *St. Louis, S. F. & T. R. Co.*, 270 U. S. 1, in which the courts adjudicated disputes which were not the bases of the original complaints. None of the cases cited was brought under the Suits in Admiralty Act. The first two suits invoked the Tucker Act, now 28 U. S. C. § 1346, while *Wabash* was brought in the Court of Claims. The controlling statutes contain express authority for entertaining unrelated setoffs. See n. 11, *infra.* On this point, these cases indicate no more than that when the pleadings properly in the case, taken together, indicate there are disputes as to issues not raised in the complaint, those issues will be determined.

the Act shall "proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." With this express command before us, we must ascertain whether admiralty practice permits private parties to defend by setting up claims arising out of separate and unrelated transactions between the parties.

Traditionally, admiralty has narrowly circumscribed the filing of unrelated cross-libels and defenses. The first American case considering this problem appears to be *Willard* v. *Dorr,* 29 Fed. Cas. No. 17,680 (1823), in which Justice Story sitting as Circuit Justice refused to permit the attempted setoff. Since that early holding various reasons have been offered for refusal to entertain unrelated defenses: protection of the seaman's wage claims; [4] preservation of relatively simple proceedings not affecting third-party rights; [5] and the recognition that allowing cross-libels might deprive litigants of jury trials to which they would otherwise be entitled if the cross-libel were pressed in an independent proceeding. [6] But for whatever reason, the doctrine gained general acceptance. [7]

---

[4] See, *e. g., The Hudson,* 12 Fed. Cas. No. 6,831; *Willard* v. *Dorr,* 29 Fed. Cas. No. 17,680; *Shilman* v. *United States,* 164 F. 2d 649. See also *Isbrandtsen Co.* v. *Johnson,* 343 U. S. 779.

[5] See, *e. g., Howard* v. *9,889 Bags of Malt,* 255 F. 917; *The Ping-On* v. *Blethen,* 11 F. 607, 611–612. In *British Transport Comm'n* v. *United States,* 354 U. S. 129, the rights of the various parties arose from the same collision. Cf. *Powell* v. *United States,* 300 U. S. 276, 290.

[6] See, *e. g., The Yankee,* 37 F. Supp. 512; *Bains* v. *The James and Catherine,* 2 Fed. Cas. No. 756.

[7] The following cases arose in the Second Circuit: *The Hudson,* 12 Fed. Cas. No. 6,831; *Emery Co.* v. *Tweedie Trading Co.,* 143 F. 144; 146; *The Oceano,* 148 F. 131, 132; *United Transportation & Lighterage Co.* v. *New York & B. T. Line,* 185 F. 386; *The Jane Palmer,* 270 F. 609; *The Yankee,* 37 F. Supp. 512; *Cioffi* v. *New Zealand*

This consistent pattern of the cases in admiralty on this point was reflected in the promulgation of Rule 54 of the Admiralty Rules by this Court at December Term, 1868, 7 Wall. v:

"Whenever a cross-libel is filed upon any counter claim arising out of the same cause of action for which the original libel was filed, the respondents in the cross-libel shall give security in the usual amount and form, to respond in damages as claimed in said cross-libel, unless the court on cause shown, shall otherwise direct; and all proceedings upon the original libel shall be stayed until such security shall be given."

That rule has remained in the Admiralty Rules [8] ever since with only slight change and now appears as Rule 50 in the following form which still reflects the underlying settled state of the law:

"Whenever a cross-libel is filed upon any counter-claim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims

---

Shipping Co., 73 F. Supp. 1015, 1016; Ozanic v. United States, 188 F. 2d 228, 231.

Cases arising in other Circuits include: Willard v. Dorr, 29 Fed. Cas. No. 17,680; Bains v. The James and Catherine, 2 Fed. Cas. No. 756; The Two Brothers, 4 F. 158; The Zouave, 29 F. 296; Anderson v. Pacific Coast Co., 99 F. 109; Howard v. 9,889 Bags of Malt, 255 F. 917; Monongahela & Ohio Dredging Co. v. Rodgers Sand Co., 296 F. 916; Susquehanna S. S. Co. v. A. O. Anderson & Co., 6 F. 2d 858, 859; Hildebrand v. Geneva Mill Co., 32 F. 2d 343, 347.

[8] Present authority for this Court's promulgation of Admiralty Rules is found in 28 U. S. C. § 2073. Original authority is found in the Act of August 23, 1842, 5 Stat. 516, 518.

set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs." [9]

But the Government urges the Court in this particular case to apply the more flexible procedure utilized in civil cases in federal courts.[10] The Government contends that none of the reasons for limited cross-libels suggested above has any application to the particular facts of this case and that, moreover, the rule has become an anachronism and is out of line with the practice in specific courts [11]

[9] It is interesting to note that the local rules of several of the District Courts have recognized the same principle. See, *e. g.,* Rule 16 of the Admiralty Rules of the United States District Courts for the Southern and Eastern Districts of New York.

[10] See Fed. Rules Civ. Proc., 13 (b):

"A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Rule 13 (c):

"A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party." See generally, 3 Moore, Federal Practice (2d ed.), § 13.01 *et seq.*

[11] The jurisdictional statute of the Court of Claims, 28 U. S. C. § 1503, provides:

"The Court of Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court."

Rule 17 (b) of the Court of Claims provides:

"The answer may state as a counterclaim any claim against a plaintiff not arising out of the transaction or occurrence that is the subject matter of the petition."

See also 28 U. S. C. § 1346 (c) relating to jurisdiction of the District Courts over certain claims against the United States:

"The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section."

and with the general rules of practice for federal courts.[12] But it should be observed that where the procedure has been changed in this regard it has been the result of legislation or rulemaking and not the decisional process.[13]

The law on this point in admiralty has been settled beyond doubt in the lower courts for many years and an Admiralty Rule of this Court recognizes this case law. We think that if the law is to change it should be by rulemaking or legislation and not by decision.

Whether the setoff and cross-libel procedure now operative in admiralty is anachronistic, is not a matter best considered by this Court in a litigation without the benefits which normally accompany intelligent rulemaking—including hearings and opportunities to submit data. In addition to this Court's responsibility for rulemaking, the Judicial Conference of the United States [14] has been given certain responsibilities in this area by the Act of July 11, 1958, 72 Stat. 356:

> "The Conference shall also carry on a continuous study of the operation and effect of the general rules of practice and procedure now or hereafter in use as prescribed by the Supreme Court for the other courts of the United States pursuant to law. Such changes in and additions to those rules as the Conference may deem desirable to promote simplicity in procedure, fairness in administration, the just determination of litigation, and the elimination of unjustifiable expense and delay shall be recommended

---

[12] See n. 10, *supra*. But see § 3 of the Public Vessels Act, 43 Stat. 1112, 46 U. S. C. § 783, providing that when the United States files libel against a private party, the private party may only set off or counterclaim for damages "arising out of the same subject matter or cause of action. . . ."

[13] See Clark, Code Pleading (5 1 ed.), §§ 100, 101.

[14] For the composition and function of the Judicial Conference of the United States see 28 U. S. C. § 331, as amended by the Act of July 11, 1958, 72 Stat. 356, quoted in the text.

by the Conference from time to time to the Supreme Court for its consideration and adoption, modification or rejection, in accordance with law.

The result in this case does not cause irreparable loss to the United States nor indeed require any expenditure of government funds prior to the complete disposition of all claims. The Government is authorized to withhold payment of Isthmian's judgment in this case to the extent the Government has claims outstanding against Isthmian.[15] The only requirement is that the Government press the libel now pending in the District Court. In other situations where no suit is pending, the United States may have to commence a separate suit rather than set up an unrelated defense in the original suit. This may be an inconvenience to the United States but it must be remembered that Congress has expressly declared that when sued under the Suits in Admiralty Act the United States is to have its procedural rights determined and governed in the same manner as private parties.

The Government also complains that the District Court improperly awarded compound interest. This resulted from the decree's direction that interest be computed at

---

[15] Act of March 3, 1875, 18 Stat. 481, as amended, 31 U. S. C. § 227. The interest provisions of this section indicate that Isthmian may well be prejudiced if the prior law is disregarded in this case because the other reasons for the rule may not exist. If the Government were permitted to raise its cross-libel in this case and should lose on the merits, then at best Isthmian might be awarded 4% interest on $115,203.76 to run from the date of the libel until satisfaction.

But if the Government's cross-libel is not permitted in this case, Isthmian is entitled to a decree *pro confesso*. The Comptroller General then will withhold payment of the judgment until the Government's action is terminated and if the Government should lose on the merits of its claim, § 227 requires the Government pay the withheld amount with interest at 6% "for the time it has been withheld from" Isthmian. The difference in rates is of no mean significance when the amount in dispute is as large as it is here.

4% from the filing of the libel until the entry of the decree, and that interest run at 4% from decree until satisfaction with this latter interest to be computed upon the entire decree including the interest up to decree.

Section 3 of the Suits in Admiralty Act, 46 U. S. C. § 743, provides:

> "A decree against the United States . . . may include costs of suit, and when the decree is for a money judgment, interest at the rate of 4 per centum per annum until satisfied, or at any higher rate which shall be stipulated in any contract upon which such decree shall be based. Interest shall run as ordered by the court. . . ."

Congress' demonstrated concern with the problem of interest under the Suits in Admiralty Act indicates that it intended to cover these awards affirmatively and not have them controlled by the general command that the suit "shall proceed and shall be heard and determined according to the principles of law" applicable to private parties. Section 3 provides for but one award of interest in the decree and that award is limited to 4% until satisfaction. We find nothing in the rather ambiguous statute authorizing the accumulation of interest up to the decree and then a second independent award of interest which operates upon the first interest. Compound interest is not presumed to run against the United States. See *Cherokee Nation* v. *United States,* 270 U. S. 476, 490.

The judgment is affirmed as to entry of the decree *pro confesso.* The award of compound interest was improper and the judgment is reversed and remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*