**PAN–ATLANTIC STEAMSHIP CORPO- RATION, a Corporation, Libelant,**

v.

**The UNITED STATES of America, Respondent.**

**No. 1816.**

United States District Court
D. Delaware.

Sept. 27, 1965.

Aaron Finger and James T. McKinstry, of Richards, Layton & Finger, Wilmington, Del., and John Grow, of Armbrecht, Jackson, McConnell & De Mouy, Mobile, Ala., of counsel, for libelant.

Alexander Greenfeld, U. S. Atty., and William J. Wier, Jr., Asst. U. S. Atty., Wilmington, Del., and Lawrence F. Ledebur, Atty., Admiralty and Shipping Section, Dept. of Justice, Washington, D. C., of counsel, for respondent.

CALEB M. WRIGHT, Chief Judge.

Respondent has filed a motion for summary judgment.

The dispute arises out of a bareboat charter agreement between libelant and respondent. Libelant paid the basic charter hire for the year 1949, which is based on the statutory sales price of the chartered vessels.[1] A net voyage loss for 1949 of $170,687.68 was sustained by the libelant so that under the terms of the charter hire no contingent charter hire over and above the basic charter hire was due or payable.[2] For the first three months of 1950, at the end of which time the charter expired, libelant realized a net voyage profit for this period on which the government contends the contingent charter hire would be $33,320.78.[3] Libelant paid only the basic charter hire for the three months period on the theory it was entitled to cumulative accounting over the life of the charter and could carry forward the 1949 loss to offset the profit realized in 1950 and therefore no contingent charter hire was due respondent.[4]

Respondent took the opposite position and concluded that the libelant was not entitled to cumulative accounting and on

---

1. See Stoudenmire Affidavit, Exhibit "B".

2. Stoudenmire Affidavit, p. 4.

3. Stoudenmire Affidavit, p. 4.

4. Stoudenmire Affidavit, pp. 3–5; Exhibits "B" and "C".

March 9, 1951, submitted an invoice to libelant in the amount of $33,320.78 representing the contingent charter hire the respondent contended was due.[5]

Demand for payment was made upon the libelant on April 16, 1951. On May 21, 1951, libelant notified respondent that payment of the submitted invoice was being withheld pending legal opinion of counsel.

Thereafter, a "setoff payment order" was placed against the libelant's account by the Maritime Commission for failure to pay the above mentioned invoice. The libelant was apprised of the "setoff payment order" on May 25, 1951 and was also notified on the same date that "This order will be withdrawn upon clearance of the amount due from you either by offsetting vouchers payable to you, or by your payment of the invoices." [6]

Thereafter during 1951 and 1952 the respondent withheld the sum of $33,320.-78 due the libelant on other unrelated contracts between the parties about which there was no dispute. As a result, on February 14, 1952, respondent notified libelant that the amount of $33,320.78 allegedly due on the bareboat charter had been "cleared by payment." [7]

Libelant has now brought suit to recover the amount of $33,320.78 which libelant contends was illegally exacted from it on the bareboat charter. The respondent moved to dismiss the libel contending that libelant sued on the wrong contract, i. e., it should have sued on the undisputed contract against which the "setoff payment order" was applied, for here, if anywhere, is where the money was wrongfully withheld. Consequently,

libelant contends monies obtained by respondent by the "setoff payment order" and applied in satisfaction of the disputed amounts claimed on the bareboat charter do not constitute payment of the bareboat charter claims so as to authorize libelant's suit to recover monies wrongfully withheld under the bareboat charter.[8]

The respondent relies principally on the case of United States v. Isthmian S. S. Co., 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959). This court is of the opinion that reliance thereon is unjustified. True, the factual situation in Isthmian, is identical with the facts here. However, United States v. Isthmian, supra, stands only for the proposition that setoff of an unrelated claim cannot be asserted as a defense in a suit in admiralty. In Isthmian, libelant sued on the undisputed contractual obligations which the government owed libelant and from which funds had been withheld to pay the disputed claim on the charter hire. The respondent pleaded payment by way of defense.[9]

At the outset, Mr. Chief Justice Warren who delivered the opinion, stated that "The principal question presented in this case is whether in an action under the Suits in Admiralty Act, 41 Stat. 525, as amended, 46 U.S.C. § 741 et seq., the United States may defend by pleading against the libelant a claim arising out of an unrelated transaction."

The court held that the answer must be negative since an attempt to prove a claim arising out of a separate and unrelated transaction was impermissible

---

5. Stoudenmire Affidavit, p. 5; Exhibit "D" attached.

6. Stoudenmire Affidavit, pp. 5–6; Exhibits "F" and "G" attached.

7. Stoudenmire Affidavit, p. 6; Exhibit "H" attached.

8. Initially, as an alternative the respondent contended that the cause of action was barred by the two year period of limitation prescribed by the Suits in Admiralty Act, 46 U.S.C.A. § 745. However, by

stipulation of the parties, the statute of limitations defense is not at issue at this time. See libelant's Brief, p. 1 and transcript of the record of oral argument on November 18, 1964 at pages 2 and 15.

9. As pointed out in the opinion, the government's plea of payment was not payment but actually setoff, i.e., the withholding of money due on the contract in suit and applying to a contract not in suit.

under Admiralty Rule 50.[10] It unequivocally rejected the suggestion of the government that the court apply the more flexible procedure for counterclaims as utilized in civil cases in Federal Courts. See opinion in United States v. Isthmian, supra, at page 322, 79 S.Ct. at page 862.

The Chief Justice stated, "The law on this point in admiralty has been settled beyond doubt in the lower court for many years and an Admiralty Rule of this Court recognizes this case law. We think that if the law is to change it should be by rulemaking or legislation and not by decision." The treatment of the defense of setoff in Isthmian is demonstrative of a provision peculiar to admiralty. The court in Isthmian is concerned solely with counterclaims and defenses to suits in admiralty.

There is nothing in the Admiralty Rules precluding suit on a contract for overpayment. The real issue here is whether under the bareboat charter hire in suit the government is entitled to retain the money it has applied in satisfaction of it. The way in which the government obtained payment from the libelant is immaterial. Whether there are two physical transfers of money, the government to the libelant and its return, or the government used a bookkeeping entry to reach the same result has no bearing on the present case. No issue collateral to the libelant's claim is raised concerning the means by which the government obtained the money as would have happened in Isthmian, supra. Here, the libelant has sued on the contract, the terms of which are in dispute. The actual dispute between the parties is before the court, no unrelated matter is in issue. Moreover, by so doing it has avoided the circuity of action which would have resulted had it proceeded as did the libelant in Isthmian. As a matter of law and logic this is the proper procedure for settling the dispute over the bareboat charter hire rates. Nothing in Isthmian, supra, or related cases cited by the respondent indicated otherwise.[11]

In accordance herewith summary judgment is denied.

---

10. Admiralty Rule 50 (Title 28 U.S.C.A. p. 113 et seq.) reads as follows:

"Rule 50. Security on cross-libel

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs."

11. Grace Line, Inc. v. United States, 255 F.2d 810 (2 Cir. 1958); Isbrandtsen Company v. United States, 255 F.2d 817 (2 Cir. 1958).