UNITED STATES of America, Plaintiff,

v.

FALL RIVER NAVIGATION COMPANY and the Travelers Indemnity Company, Defendants.

No. 63 AD 563.

United States District Court
S. D. New York.

May 15, 1968.

River Navigation Co.; Richard R. Paradise, Charles B. McInnis, Roger H. Muzzall, Washington, D. C., of counsel.

Harnett, Reid & Brown, New York City, for defendant Travelers Indemnity Co.; Thomas A. Harnett, Maurice & McNamee, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

Defendant, Fall River Navigation Company, moves for judgment on the pleadings against plaintiff, pursuant to Rule 12(c), Fed.R.Civ.P. The motion is hereby denied in all respects.

The libel and complaint, filed May 17, 1963, alleges five causes of action against Fall River, as bareboat charterer of "war-built dry-cargo vessel[s]" from the War Shipping Administration and the United States Maritime Commission (pursuant to the Merchant Ship Sales Act of 1946, 50 U.S.C.A.App. § 1735 et. seq.), and against The Travelers Indemnity Company, as surety on performance bonds. The United States seeks a declaratory judgment that (1) two charter contracts executed in 1946 are valid, binding and enforceable against Fall River, and that (2) the United States is entitled to recover certain amounts for unpaid "additional charter hire" and for equipment shortages under such charters.

Defendant Fall River urges two grounds for the relief requested: (1) that the libel filed by the United States herein constituted a compulsory counterclaim, pursuant to admiralty practice and to Rule 13(a), Fed.R.Civ.P., to two previous libels filed by Fall River in 1956 (Ad. 187–266 and Ad. 187–267), and "by reason thereof the United States has waived its right to recover thereon"; and (2) that this Court should refuse to entertain the present libel because it "constitutes a flagrant misuse of the Declaratory Judgment remedy". [Memorandum of Fall River, pp. 20, 25.]

This action is only the latest in a series of suits between the parties relating to the charter agreements dated

Robert M. Morgenthau, U. S. Atty., for plaintiff United States; Louis E. Greco, Gilbert S. Fleischer, New York City, of counsel.

Zock, Petrie, Sheneman & Reid, New York City, for defendant Fall River Navigation Co.; Francis J. O'Brien, Charles E. Duross, New York City, of counsel.

McInnis, Wilson, Munson & Woods, Washington, D. C., for defendant Fall

June 17, 1946 (WSA–13084) and September 2, 1946 (MCc–41734). In 1954, Fall River filed a petition against the United States in the Court of Claims to recover certain sums allegedly illegally exacted by the Maritime Commission (No. 97–54, filed March 5, 1954). The United States filed a counterclaim alleging a right to certain sums for "additional charter hire" and for equipment shortages. However, a stipulation of dismissal was filed on July 1, 1955, dismissing Fall River's claim with prejudice and dismissing the counterclaim *without* prejudice.

Then, on February 14, 1956, Fall River filed two libels against the United States (Ad. 187–266 and Ad. 187–267) in the United States District Court for the Southern District of New York alleging that it paid excessive charter hire under the charters in question. This Court sustained exceptions to the libels on the ground that they were time-barred under Section 5 of the Suits in Admiralty Act, 46 U.S.C.A. § 745. The decision was ultimately affirmed sub nom. American-Foreign Steamship Corporation v. United States, 291 F.2d 598 (2d Cir.), cert. denied 368 U.S. 895, 82 S.Ct. 171, 7 L.Ed.2d 92 (1961).

In the course of the *American-Foreign* appeal and various rehearings, there was a reversal at one point; and it became necessary for the United States to file answers to the 1956 libels. Fall River's principal contention herein is based upon the failure of the United States to file its present claims as counterclaims in these answers.

Fall River argues that counterclaims and cross-libels were recognized in admiralty practice before the 1966 amendments to the Federal Rules of Civil Procedure which combined admiralty and civil practice;[1] that there is a direct analogy between Rule 13(a), Fed.R. Civ.P.,[2] and former Admiralty Rule 50;[3] and, that although the admiralty rules did not expressly provide for compulsory counterclaims, admiralty practice was not merely a rigid system of rules but was largely judge-made and "* * * the tendency of the courts sitting in admiralty oftentimes [was] to indirectly apply the Federal Rules where the admiralty rules d[id] not specifically cover a given situation" [Fall River's Reply Memorandum, p. 5]. In addition, Fall River argues that there is "an obvious and logical relationship" between the claims pressed in the United States' present libel and Fall River's claims in its 1956 libels in that the same contracts, same transactions and same issues are involved; that the failure of the United States to file such counterclaims results in piecemeal litigation, "abuse of judicial process", and "manifest injustice" to Fall River because Fall River has been non-operational since 1949 and has been forced to maintain its corporate existence after 1962 solely by reason of the present libel of the United States; that the United States would not have waived its time-bar defense to the 1956 libels had it asserted compulsory counterclaims; that the Federal Rules of Civil Procedure, admiralty practice and "inherent logic" required the United States

1. By order dated February 28, 1966, the Rules of Practice in Admiralty were rescinded and the Federal Rules of Civil Procedure were, in large part, made applicable to admiralty proceedings effective July 1, 1966. 383 U.S. 1029 (1966).

2. Rule 13(a), Fed.R.Civ.P., provides in part:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *."

3. Former Admiralty Rule 50 provides in part:

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; * * * *"

to file its present claims as compulsory counterclaims to the 1956 libels; and that, therefore, the present claims of the United States have been waived.

The United States, on the other hand, argues that *compulsory* counterclaims were unknown to pre-1966 admiralty practice; that even assuming that *compulsory* counterclaims were recognized in admiralty prior to 1966, the court lacked jurisdiction over the 1956 libels because they were dismissed as time-barred; and, therefore, there is no waiver of the present claims.

Prior to the 1966 amendments to the Federal Rules of Civil Procedure, no specific admiralty rule regulated the practice of cross-libels and counterclaims. However, former Admiralty Rule 50, providing for security for costs on a cross-libel "filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed", has been uniformly interpreted as restricting cross-libels to those arising out of the same contract or cause of action. United States v. Isthmian Steamship Co., 359 U.S. 314, 320, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959); Solomon v. Bruchhausen, 305 F.2d 941, 943 (2nd Cir. 1962), cert. denied sub nom. Isbrandtsen Co. v. Maximo, 371 U.S. 951, 83 S.Ct. 506, 9 L.Ed.2d 499 (1963); Moore-McCormack Lines, Inc. v. McMahon, 235 F.2d 142, 143 (2d Cir. 1956). See 2 Benedict on Admiralty (6th ed. 1940) §§ 328–329. The former Admiralty Rules provide no further guidance.

Admiralty practice, on the other hand, See Dowling v. Isthmian S.S. Corporation, 184 F.2d 758 (3rd Cir. 1950), cert. denied 340 U.S. 935, 71 S.Ct. 493, 95 L.Ed. 675 (1951), clearly refutes the contention pressed by Fall River. It has long been held that affirmative rights may be asserted in admiralty *either* by a cross-libel *or* by independent suit. See, e. g. Patterson Oil Terminals, Inc. v. The Port Covington, 205 F.2d 694, 697 (3rd Cir. 1953), and cases cited therein. Moreover, Fall River cites no authority which supports the proposition that admiralty practice prior to 1966 recognized a *compulsory* counterclaim rule.

The civil rules also do not support Fall River's position. Prior to July 1, 1966, the Federal Rules of Civil Procedure were *expressly* not applicable to "proceedings in admiralty". Former Rule 81(a) (1), Fed.R.Civ.P.

It is true that practice in admiralty prior to the 1966 amendments was "extremely plastic" and was "not immune to some of the changes in procedure elsewhere." Boston Ins. Co. v. City of New York, 130 F.2d 156 (2nd Cir. 1942). See e. g. Untersinger v. United States, 172 F.2d 298 (2nd Cir. 1949) (whether answering to merits constitutes a waiver of defect in venue); Walsh v. United States, 81 F.Supp. 667, 668 (E.D.Pa. 1949) (timeliness of answer). In addition, courts sitting on admiralty matters often looked to the civil rules for interpretive analogies. See e. g. Solomon v. Bruchhausen, supra (whether cross-libel arises out of same contract or cause of action); United States v. Eastport Steamship Corporation, 255 F.2d 795, 802 (2nd Cir. 1958) (analogizing Civil Rules 13 to Court of Claims rule re compulsory counterclaims); American-Hawaiian Steamship Co. v. Bowring & Co., 150 F. Supp. 449, 455 (S.D.N.Y.1957). But the Federal Rules of Civil Procedure were never applied in admiralty where admiralty practice was "settled" or "established" to the contrary. United States v. Isthmian Steamship Co., 359 U.S. at 322–323, 79 S.Ct. 857 (1959) (whether cross-libels restricted to same contract or cause of action); Zim Israel Navigation Co. v. T. Chatani & Co., 249 F.Supp. 535, 538 (S.D.N.Y.1966). Cf. Miner v. Atlass, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960) (local discovery—deposition rule). As the Supreme Court indicated in United States v. Isthmian Steamship Co., 359 U.S. at 323, 79 S.Ct. at 862, in such a case "if the law is to change it should be by

rulemaking or legislation and not by decision." [4]

Policy considerations also dictate rejection of Fall River's contention. Although Fall River's position would prevent piecemeal litigation, it would be manifestly unjust for this Court in 1968 to state that the United States in the period between 1956 and 1961 was *required* to assert counterclaims, despite the then existing admiralty practice during the period. No litigant—not even the Government—is required to be so clairvoyant.

In view of the foregoing, it is not necessary to reach the argument pressed by the United States that because the 1956 libels were dismissed as time-barred, American-Foreign Steamship Corporation v. United States, supra, its failure to assert counterclaims to the 1956 libels does not bar the present action. See States Marine Corp. of Delaware v. United States, 283 F.2d 776, 778 (2nd Cir. 1960) (if claim time-barred, court lacks jurisdiction over United States); United States v. Eastport Steamship Corporation, supra (failure to plead a compulsory counterclaim fatal only if court had jurisdiction).

Fall River's only other ground for judgment on the pleadings—that declaratory relief herein would be improper —is clearly without merit.

■ There can be no doubt that it is within the discretion of a district court to decline to exercise its jurisdiction to grant declaratory relief. 28 U.S.C. § 2201. Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962) (per curiam) ("The Declaratory Judgment Act was an authorization, not a command."); Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86

L.Ed. 1620 (1942); Lebowich v. O'Connor, 309 F.2d 111, 112 (2nd Cir. 1962). However, it is equally clear that "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." Public Affairs Associates, Inc. v. Rickover, supra; Lumbermens Mutual Casualty Company v. Quick, 257 F.Supp. 252, 254 (D.S.C. 1966) (discretion limited to "judicially sound considerations").

■ Although inequitable conduct on the part of the plaintiff amounting to unclean hands or laches is a recognized ground to refuse to grant declaratory relief, See E. Borchard, Declaratory Judgments (2nd ed. 1941) 239–240, 305, Fall River has failed to demonstrate that such conduct is present in this case. Fall River argues that the claims pressed by the United States are stale or, in its words, "hoary with age". It is not necessary to describe the facts underlying this argument. It is sufficient to note that much of this delay is judicial in origin.

■ Whether considered as a matter of general equity principles or under the specific rubric of laches, See Holmberg v. Ambrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946), Fall River's argument must fail. There is clearly a real and concrete controversy between Fall River and the United States. Moreover, as the United States correctly argues, the Government is not subject to the defense of laches. United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); Board of County Commissioners of County of Jackson v. United States, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313 (1939) (dictum).

Accordingly, defendant Fall River's motion for judgment on the pleadings is denied. So ordered.

4. The Supreme Court's suggestion has been heeded. See note 1, supra. Thus, Rule 13(a), Fed.R.Civ.P., requiring the assertion of compulsory counterclaims, is presently applicable to admiralty proceedings.