**ROUTED THRU-PAC, INC.**

v.

**The UNITED STATES.**

**No. 384-64.**

United States Court of Claims.

Oct. 18, 1968.

Alan F. Wohlstetter, Washington, D. C., attorney of record, for plaintiff. Denning & Wohlstetter, Ernest H. Land, and Martin Sterenbuch, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

DURFEE, Judge.

There are two causes of action in this case: (1) A claim for the transportation charges which plaintiff says it is entitled to under Items 15 and 145 of Military Basic Tender No. 1, relating to the movement into and out of storage-in-transit, and (2) A claim for transportation charges under Item 150 of Military Basic Tender No. 1, relating to the diversion or reconsignment of shipments.

We hold that plaintiff is not entitled to compensation for *both* movement into and out of storage-in-transit under the applicable Items of Military Basic Tender No. 1 for reasons to be discussed below. As for plaintiff's second cause of action, we grant plaintiff's motion to dismiss this cause of action with prejudice.

The pertinent facts of this case are as follows:[1]

Plaintiff, a New York corporation, acts as an unregulated freight forwarder, operating under an exemption set forth in Section 402(b) of the Interstate Commerce Act,[2] engaging in the forwarding of used household goods. On September 28, 1959, plaintiff entered into an unregulated freight forwarder agreement with the Military Traffic Management Agency (predecessor to the Defense Traffic Management Service) of the Department of Defense. Under

---

1. A more thorough recitation of facts, as found by Chief Commissioner Marion T. Bennett, and which we adopt with slight modifications as findings of the court, follow the opinion.

2. 49 U.S.C. § 1002(b).

this agreement, plaintiff held itself out to the Department of Defense to transport or to provide transportation of used household goods for compensation in door-to-door container service, and assumed complete responsibility for such shipments from point of origin to point of final destination.

Door-to-door container service involves the prepacking and loading of each shipment into specifically designed carrier-owned containers at the origin residence, transportation of the loaded containers to port of departure, arranging for the movement by ocean vessels or by air transportation of the loaded containers beyond the port of discharge to destination residence and placing the household goods into the new residence.

By letter of approval, dated October 13, 1959, and reissues and amendments thereto, plaintiff was authorized by the Department of Defense to provide door-to-door container service between numerous points in the United States and points overseas.

In 1962, it became apparent that the then existing system of individual rate tender filings by household goods carriers precluded the efficient processing of the rate tenders by the Defense Traffic Management Service (DTMS). Transmission of rate information from DTMS to installation transportation officers was unduly delayed by manual processing of the thousands of individual tenders. At that time, Colonel Darrell H. Burnett, who was assigned to DTMS, was directed to formulate a better system of processing tenders and getting them out to the installation transportation officers. Colonel Burnett headed a committee of DTMS personnel which devised a system for submission of single-factor rates on key-punch cards hereinafter referred to as EAM cards for use with computers.

In addition to the single-factor rates published on EAM cards, charges for the accessorial services were to be contained in uniform Military Basic Tender No. 1 (hereinafter referred to as MBT No. 1), which was drafted by defendant and transmitted to plaintiff through its agent, Mr. Stein, in late 1962.[3]

During the year 1963, plaintiff transported eight household goods shipments between points in the continental United States and points overseas for the Department of Defense pursuant to the terms and conditions set forth in MBT No. 1. These eight shipments form the subject matter of the first cause of action. All eight shipments were placed in storage-in-transit after movement to their respective destination ports or terminals. One shipment, the De Conno shipment, was also stored at origin, i. e., it was stored temporarily after pick-up at residence and before movement to the port for ocean transportation.

The warehouses in which a particular shipment is stored in transit is a warehouse which is selected by plaintiff and which has been previously inspected and approved by the military for the area involved. One of the grounds for refusing such approval is that the location of the warehouse is an excessive distance from the pier or terminal.

The necessity for storage-in-transit arises out of the fact that it is sometimes necessary for the Department of Defense to put household goods into the transportation stream without knowing the ultimate time or place of unloading, i. e., without knowing the new residence or the exact date of arrival of the transferred military member. Plaintiff has admitted that it was aware of this fact, viz., that a number of shipments would be ordered into storage-in-transit and not directly to the destination residence, at the time it submitted its single-factor

---

3. An essential ingredient of this system was that all carriers participating in the subject traffic would have to have the identical basic tender on file with DTMS, so that the only competitive factor among these carriers would be the single-factor rate. No one carrier participating in the subject traffic could make any change in the MBT without first obtaining the concurrence of the entire industry.

rates. MBT No. 1 explicitly provided for such situations.

The issue here is whether *both* the movement into and the movement out of storage-in-transit are accessorial or additional services subject to additional compensation under Item 145, *i. e.*, in excess of the compensation of the single-factor rate, or whether one of the movements relating to SIT (e. g., movement into SIT when SIT occurs at destination) is already included within the single-factor rate.

The answer to this question must be obtained from MBT No. 1 itself:

Item 15 of MBT No. 1 provides in pertinent part:

The single factor transportation rates filed with DTMS on EAM tender format applies on personal effects and property * * * from the origin installation and a radius of fifty (50) miles * * * to the specified destination area.

Single factor transportation rates INCLUDE THE FOLLOWING SERVICES:

* * * * * *

c. *All land and water transportation, EXCEPT:*

(1) *Additional land transporation charges for Pickup or Delivery on Storage-in-Transit shipments* as provided in Item 145 herein.

(2) When origin is beyond the 50 mile radius (within Alaska a 14 mile radius) additional land transportation charges as provided in Item 155 herein will apply. [Emphasis supplied.]

Item 145 of MBT No. 1 provides in pertinent part:

Section II—Additional Services

PICK-UP OR DELIVERY TRANSPORTATION RATES TO APPLY ON STORAGE-IN-TRANSIT SHIPMENTS (Subject to applicable rules)

APPLICATION

* * * * * *

Rates apply depending upon location of warehouse as shown below, *on pick-up or delivery of storage-in-transit shipments* when point of pick-up or delivery and warehouse are both located within the same municipality or within a distance of 50 miles or less, (EXCEPT for ALASKA see Schedule E). [Emphasis supplied.]

Plaintiff's position [4] is that the word "pick-up" and the word "delivery" in Item 145 (see, supra) refer to two new and distinct movements not compensated under the single-factor rate, i. e., two movements which it does not perform when the shipment moves directly to the consignee (namely, there is the transportation from the destination terminal to the SIT warehouse, and then, at the end of the storage period, there is the transportation from the SIT warehouse to the consignee's residence). The term "pick-up" in Item 145 refers to the first of these two movements, i. e., the movement into SIT, and the term "delivery" refers to the second, i. e., the movement out of SIT to the consignee. The above description applies, according to plaintiff, when SIT occurs at area of destination. Similarly, when the SIT occurs at area of origin, there are also two distinct movements which the shipper would not otherwise perform if the shipment moved directly from the origin residence to the destination of consignee. In other words, according to plaintiff, there is a "pick-up" and "delivery" on each storage-in-transit situation. Such pick-up and delivery constitute additional movements entitled to additional compensation pursuant to Item 145 as accessorial services not included in the single-factor rate, according to plaintiff. It should be noted that plaintiff's interpretation requires us to read the word "or" in Item 145 as if it were "and", that is, "[Additional] rates apply * * * on pick-up *and* de-

4. For purposes of simplifying the ensuing discussion, it will be assumed that storage-in-transit occurs at area of destination, rather than at area of origin, unless specifically stated otherwise.

livery on storage-in-transit shipments ∗ ∗ ∗."

■■ We find this interpretation of Items 15 and 145 at best conceivable, but not reasonable, as it must be for plaintiff, to recover. See, Bishop Engineering Co. Inc. v. United States, 180 Ct.Cl. 411, 416 (1967). The same standard of reasonableness is a prerequisite for application of the ambiguity rule. See, Aero Mayflower Transit Co., Inc., et al. v. United States, 162 Ct.Cl. 233, 239 (1963). When MBT No. 1 is considered as a whole, there is no substantial and reasonable ambiguity in Item 145. Although we see numerous reasons why plaintiff's interpretation is unreasonable, we shall only discuss the fundamental flaws.

Item 15 of MBT No. 1 states that single-factor transportation rates includes "all land and water transportation" with an exception for "Pick-up or Delivery on Storage-in-Transit shipments".

It is undisputed in shipments not involving SIT that plaintiff is obliged in consideration for the single-factor rate to "pick-up" goods at the origin residence and "deliver" these goods to the destination residence. In other words, the single-factor rate necessarily includes one "pick-up" and one "delivery" and all the land and water transportation in between. More specifically, the forwarder (plaintiff) is required under the single-factor rate to move the goods from the destination terminal (pier or line-haul terminal) to the destination residence. It is this movement which constitutes the delivery. It should be pointed out that Item 15 did not specify that the "delivery" be made to a consignee's new residence, but provided for deliveries to a "destination area". It must have been contemplated, then, that some "deliveries" under Item 15 could and would be made to a warehouse for temporary storage.

Item 145 provides additional compensation only for "additional" or "accessorial" services rendered above and beyond what is required by the single-factor rate. Item 145 provides for additional rates "on pick-up *or* delivery of storage-in-transit shipments when point of pick-up *or* delivery and warehouse are both located within the same municipality or within a distance of 50 miles or less ∗ ∗ ∗". [Emphasis supplied.]

■ We find the use of the disjunctive "or" in the phrase "pick-up or delivery" persuasive that Item 145 intended to provide additional compensation for only the one additional movement when goods are placed in storage only once. We read this Item to mean that on a SIT shipment, where storage occurs at origin, there is one additional "pick-up", but not an additional "delivery", i. e., the goods are picked up once from the origin residence and once from the origin storage warehouse. The pick-up from residence to warehouse is covered by Item 145 as additional compensation. The second pick-up at origin, i. e., from the warehouse, is covered by the single-factor rate as defined by Item 15, since defendant is entitled to at least one "pick-up" under the single-factor rate. Where storage-in-transit occurs at destination, there is an additional "delivery", but not an additional pick-up, i. e., the goods are delivered once to the warehouse and then delivered after storage to the destination residence. The first of the deliveries is compensated by the single-factor rate, since the single-factor rate necessarily includes one "delivery". The second delivery is paid pursuant to Item 145 as additional compensation. Thus, we interpret Item 145 to mean that there is either an extra "pick-up" or extra "delivery" depending on which end of the shipment storage occurs. This is the manifest meaning of the phrase "pick-up *or* delivery" in Item 145.

Plaintiff, however, points out, and rightfully so, that under certain circumstances, Item 145 may compensate a forwarder for pick-up *and* a delivery on a SIT shipment. This occurs when the goods are stored at both origin and destination. From this fact, plaintiff argues that the disjunctive "or" really means "and". According to plaintiff, it then

follows that a forwarder may recover added compensation pursuant to Item 145 for pick-up *and* delivery even when there is only one storage-in-transit. To us this does not follow, and certainly is not reasonable. The fact that a forwarder may be compensated for both pick-up and delivery on one shipment does not mean that MBT No. 1 really intended "or" to mean "and", as plaintiff contends. Item 145 uses the disjunctive "or" because it refers to a singular "storage-in-transit". This is perfectly consistent with the notion that a forwarder may claim compensation under Item 145 for both pick-up and delivery on one shipment, but only when there are *two* storages-in-transit.

Another indication in Item 145 that plaintiff's interpretation is unreasonable is revealed by an analysis of the clause in Item 145, which states that additional rates apply "on pick-up or delivery of storage-in-transit shipments when point of pick-up or delivery and warehouse are *both* located within the same municipality or within a distance of 50 miles or less * * *". [Emphasis supplied.] Plaintiff is not reasonable in arguing that there is a pick-up *and* delivery on every storage-in-transit because this interpretation renders the above-cited clause meaningless. That clause requires that "both" the warehouse and the pick-up or delivery must be within the same municipality or within 50 miles or less. Since, according to plaintiff, there is a pick-up and delivery for every storage, we do not know whether both the warehouse and the pick-up point must be within the same municipality or whether both the warehouse and delivery point must be within the same municipality— perhaps, all three should be within the same municipality. The clause as interpreted by plaintiff does not give an answer. It does become meaningful, however, when we use the obvious and manifest meaning of Item 145, to the effect

that there is *either* a pick-up *or* a delivery for any given storage-in-transit.

The most significant reason, however, for rejecting plaintiff's interpretation as unreasonable is supplied by an analysis of the number of movements involved, especially those labeled as "additional" movements by plaintiff.

The fatal fallacy in plaintiff's theory is that it claims two additional movements on storage-in-transit shipments where in fact there is only one additional movement, and for that additional movement plaintiff is paid an additional amount under Item 145.

By the terms of its Freight Forwarder Agreement and MBT No. 1, plaintiff undertook to transport or to provide transportation of used household goods for compensation in door-to-door container service. For this service plaintiff was paid a single-factor rate as defined by Item 15 of MBT No. 1 and added compensation for additional services, such as movements relating to storage-in-transit pursuant to Item 145. It is undisputed that plaintiff was obliged to make one pick-up and one delivery under the single-factor rate. The pick-up usually entailed moving the goods from the origin residence to the origin terminal (pier or railhead) then carrying the goods to the destination pier or terminal and finally moving the goods to the destination residence. Another way of casting this obligation is to say that the single-factor rate contemplated one movement *to* the origin terminal and one movement *from* the destination terminal.[5] This is a crucial point which plaintiff has completely ignored. Now when we consider a storage-in-transit situation, we add *one* additional movement. For example, if the goods are stored at destination, there is one movement from the destination terminal to the warehouse and then a second movement from the warehouse to the destination residence. In other words, there are two movements after goods

---

5. Item 15, MBT No. 1 does not specify that all movements from the destination terminal must be made to a destination residence but only that the movements be made to a "destination area".

have reached the destination terminal. Item 145 compensated plaintiff for the one added movement (from warehouse to residence), while the other movement (from terminal to warehouse) is compensated under the single-factor rate. Plaintiff erroneously counts *two* additional movements. On the one hand, plaintiff may discern two *additional* movements by double counting the one movement from the destination terminal to which defendant is already entitled by virtue of the single-factor rate. This interpretation cannot be correct since it would result in double payment. On the other hand, plaintiff may count two *additional* movements by ignoring the one movement from the terminal to which Government is entitled by virtue of the single-factor rate. This, too, cannot be correct because there is no evidence whatsoever that Government gratuitously discharged plaintiff from any part of its obligation under the single-factor rate. Nor is there any evidence that Government ordered a non-performance of the obligation to move the goods at least once after the destination terminal. In either case, there is no legal or rational reason for plaintiff's interpretation. Even using the "new" mathematics, we can only discern one movement in addition to the movement to which defendant is already entitled by virtue of the single-factor rate. The fact that in these eight cases the movement from the destination terminal was not to the destination residence is not significant in terms of plaintiff's obligation under the single-factor rate for at least one movement from the destination terminal. This is so for two reasons: first, a warehouse selected by the forwarder itself (with the approval of the military) is a reasonable substitute in terms of distance of movement and, in turn, cost; and second, Item 15 does not limit the single-factor rate to carriage of goods from residence to residence but rather "from the origin installation * * * to the specified destination area".

Plaintiff's citation to Gregory v. Barr, 203 F.2d 364 (U.S. Emergency Ct. App.

1953) which deals with the Housing and Rent Act of 1947 as amended, 50 U.S.C. App. § 1891 et seq. (1958), is irrelevant, and has no bearing on the interpretation of MBT No. 1. Also of no avail is plaintiff's citation to Beaty v. Brock & Blevins Co., Inc., 319 F.2d 43 (6th Cir. 1963) which merely construes "additional work" to mean work not contemplated in the original specifications. In the instant case, storage-in-transit was contemplated by the original MBT No. 1. For these reasons, we hold that plaintiff is not entitled to recover on its claim under Item 145 of MBT No. 1, and its first cause of action is therefore dismissed.

## II

With regard to plaintiff's second cause of action, involving Item 150 of MBT No. 1, plaintiff itself has moved to dismiss this claim with prejudice.

It is important to emphasize that plaintiff's motion to dismiss is "with prejudice". This is not the situation where one party is attempting to avoid a final judgment only to then try again at another time or perhaps in a different court. Here plaintiff has acquiesced to the fact that the dismissal will be final, and will bar all future claims arising out of the same transactions.

The only consideration which weighs against our granting plaintiff's motion is defendant's argument that we should decide the question of law involved, i. e., proper interpretation of Item 150 MBT No. 1, for purposes of expediting the settlement of other claims involving Item 150 now waiting in the wings. If the proper interpretation of Item 150 had been fully litigated during the instant litigation, defendant's argument for a decision on the merits might be persuasive. However, this is not the situation in the instant case. Neither plaintiff nor defendant adduced any oral testimony on the Item 150 issue. In addition, the written evidence pertaining to this issue is limited to shipping papers, which are of limited assistance in determining this issue. By way of contrast, in Trans Ocean Van Service v. United

States, Ct.Cl. No. 137–66, not yet decided, there are over 160 exhibits, 269 pages of oral testimony and 68 pages in plaintiff's brief directed to the resolution of the Item 150 issue. Given this situation, we are very reluctant to decide this issue now, if we have to reconsider the same issue in light of *all* the evidence a short time thereafter.

Finally, we note that in Smoot v. Fox, 340 F.2d 301 (6th Cir. 1964) the Court of Appeals, in granting a writ of mandamus directing the court below to dismiss certain actions with prejudice, held it was an abuse of judicial discretion to deny a plaintiff's motion for dismissal with prejudice. The court stated (at p. 302):

> No case has been cited to us, nor have we found any, where a plaintiff, upon his own motion, was denied the right to dismiss his case with prejudice. * * *

Thus, there is no reason in law 'or in practice, which precludes our granting plaintiff's motion.

 Defendant, in the alternative, has suggested that we consider plaintiff's Motion to Dismiss as one to Withdraw its Exceptions to the Commissioner's Report, and cites several cases as precedent in support of that suggestion. E, g., Roadway Express, Inc. v. United States, 163 Ct.Cl. 578 (1963). We reject this suggestion since plaintiff has only consented to a Motion to Dismiss with Prejudice, and has not consented to withdrawing its exceptions to the Commissioner's Report. The cases cited by defendant are not on point since there was mutual consent in those cases. See, e. g., Id. at 591.

We find also that defendant's counterclaim regarding Item 150 in the amount of $29.40 has been paid in full by plaintiff, since the check tendered by plaintiff in satisfaction of this claim was accepted and deposited by defendant. See United States v. Isthmian Steamship

Co., 359 U.S. 314, 318–319, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959); See generally, 70 C.J.S. Payment § 24.

For these reasons, we dismiss plaintiff's second cause of action with prejudice and also grant plaintiff's motion to dismiss defendant's first counterclaim and second counterclaim which are also dismissed.[6]

---

6. Defendant did not except to the Commissioner's Finding No. 61 which concluded: "Defendant is not entitled to recover on its second counterclaim".