In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3746

JAYNE A. MATHEWS-SHEETS,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cv-1426-WTL-DML—**William T. Lawrence**, *Judge.*

ARGUED JUNE 14, 2011—DECIDED AUGUST 5, 2011

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* After prevailing in this suit for social security disability benefits, the plaintiff asked for an award of attorney's fees of $25,200. The district judge cut the amount down to $6,625. He thought the hours her lawyer had spent on the case excessive and sliced them from 112 or 116 (we're about to see that it's unclear how many hours the lawyer was seeking compensation for) to 53. Although the judge's explana-

tion for this drastic cut was skimpy, it was skimpy in part because he had simply adopted objections made by the Social Security Administration's lawyer—and those objections were compelling. They included objections to 1.5 hours that the plaintiff's lawyer claimed for preparing requests for extensions of time, 6 hours for preparing the fee petition, 10 hours for preparing the reply brief in support of the fee petition, and 16 hours for preparing a two-page letter. It is not that any of the items were improper, see *Commissioner v. Jean*, 496 U.S. 154 (1990); it was that the amount of time that he had spent on each one was excessive. Moreover, he had added the 10 hours for the brief to 106 hours for his other work on the case even though the number of hours that he sought compensation for, before the addition of the hours spent on the reply brief, was 112. The judge wasn't sure whether he was asking for compensation for 106, 112, or 116 hours (or perhaps 122: 112 plus 10) The biggest chunk of time for which he sought a fee award—85.5 hours—was for writing two briefs, and as the judge pointed out "the majority of [the contents of] those briefs related to arguments that were wholly without merit."

The judge also thought the hourly rate the lawyer was seeking—$225—excessive, and cut that down to the rate specified in the statute (the presumptive ceiling, as we're about to see)—$125. Although the lawyer's argument for a higher rate was weak, the judge rejected it on an improper ground.

The Equal Access to Justice Act, which is the basis for awarding attorney's fees in this case, provides that the award "shall be based upon prevailing market rates for

the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living [since 1996, when the current version of the Act was passed] or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). This is an unusual form of fee-shifting statute, and rather chintzy; the usual form just specifies "reasonable attorneys' fees." The departure from it in the Equal Access to Justice Act is attributable to the Justice Department's reservations, shared by a number of members of Congress, about forking over government money to people litigating against the government. See H.R. Rep. No. 96-1418, 96th Cong., 2d Sess. 7 (1980); 126 Cong. Rec. 28,644-47 (1980). The Act's final form reflects this concern.

Most time spent by lawyers seeking social security disability benefits for their clients is spent at the administrative level, and fees awarded under the Equal Access to Justice Act are limited to work performed in the judicial proceeding challenging the administrative denial of benefits. See *Sullivan v. Hudson,* 490 U.S. 877, 891-92 (1989); *Raines v. Shalala*, 44 F.3d 1355, 1358 (7th Cir. 1995). But the Social Security Act provides for awarding a "reasonable fee" to compensate a lawyer who successfully represents a client in the administrative proceeding. 42 U.S.C. § 406(a)(1). And if a denial of benefits at the administrative level is successfully challenged in the district court, the court may award a "reasonable fee" under the Social Security Act for the lawyer's work in the

judicial-review proceeding, though that fee may not exceed 25 percent of the total past-due benefits that the claimant received as a result of the court's decision. 42 U.S.C. § 406(b)(1)(A). If the court awards fees under both the Social Security Act and the Equal Access to Justice Act, as it is allowed to do, only the larger of the two awards may be collected. *McGuire v. Sullivan*, 873 F.2d 974, 977 n. 1 (7th Cir. 1989); *Weakley v. Brown*, 803 F.2d 575, 580 (10th Cir. 1986). (Otherwise the lawyer would be paid twice for the same work.) The cases we've just cited say that Congress decreed this result, although all they cite is the House Report that we cited earlier, which is not legislation. But they are right—there is legislation, just not codified. Act of August 5, 1985, Pub. L. No. 99-80, § 3, 99 Stat. 183, 186 (1985); see Savings Provision Note to 28 U.S.C. § 2412.

In his initial submission the plaintiff's lawyer based his request for an hourly fee greater than $125—namely $225—on a claim that it was the prevailing market rate for his services to his client. But he failed to indicate whether he meant the prevailing market rate for lawyers in social security disability cases or some general average of lawyer fees in the region in which he practices. And he did not mention the cost of living or any other "special factor." The government in its brief in response opposed any fee award in excess of $125 an hour. The lawyer filed a reply brief in which he divided the Consumer Price Index for 2009, when the bulk of his work on the case was done, by the CPI for 1996, when the statutory rate (which had been $75 an hour) was raised to $125, and multiplied the quotient by $125, which

yielded $170. At argument he told us that he used the CPI for "midwestern towns with 50,000 inhabitants"; he practices law in the Village of Frankfort, Illinois, population 18,000. The reply brief does not indicate that he actually used that measure and our own computation indicates that $167 is the correct number, but we won't quibble over $3 an hour.

The reply brief gave no reason for choosing the CPI over other inflation measures, nor explained why an inflation adjustment was appropriate in this case. The lawyer repeated his request for $225 an hour on the ground that that was the prevailing market rate, but presumably he meant to be asking for $170 as a fallback if the judge refused to award him the prevailing rate.

The Equal Access to Justice Act does not authorize an award of the prevailing hourly rate, as such, unless it is less than $125 an hour. For that matter it doesn't authorize an award of $125 per hour, or even $125 plus inflation. The $125 rate is a presumptive ceiling; to justify a higher rate the plaintiff must point to inflation or some other special factor. *Floroiu v. Gonzales*, 498 F.3d 746, 749 (7th Cir. 2007) (per curiam); *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004); *Healey v. Leavitt*, 485 F.3d 63, 68-71 (2d Cir. 2007). If he points to inflation he still must show that it actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases. Inflation affects different markets, and different costs in

the same market, in different ways. The framers of the Equal Access to Justice Act were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government. *Bryant v. Commissioner of Social Security*, 578 F.3d 443, 450 (6th Cir. 2009); *May v. Sullivan*, 936 F.2d 176, 178 (4th Cir. 1991) (per curiam); *Headlee v. Bowen*, 869 F.2d 548, 552 (10th Cir. 1989); *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988); but cf. *Johnson v. Sullivan*, 919 F.2d 503, 505 (8th Cir. 1990) (intimating a presumption in favor of a cost of living adjustment). No such showing was made.

But the district judge did not reject the request for a higher fee on the basis of the weakness of the lawyer's argument. Instead he said that the information in the reply brief about cost of living had been submitted "too late." Although the general rule is indeed that arguments made for the first time in a reply brief are forfeited, *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009), the judge didn't invoke the rule—and anyway it was inapplicable. Remember that the lawyer asked for $225 an hour in his opening brief. The government's brief in response said it was too much. The lawyer replied that it wasn't too much because inflation brought the $125 statutory presumptive maximum to $170 in real terms. That was a non sequitur; a cost of living adjustment that raised the statutory fee to $170 provided no basis for an award of $225. The lawyer named no other factor. And he didn't help his case by arguing that he didn't

even have to *request* a cost of living increase—that it is tacked on automatically to the statutory fee, the way postjudgment interest is automatically tacked on to an award of damages. An inflation adjustment must, as we said, be justified by reference to the particular circumstances of the lawyer seeking the increase. Suppose inflation had not affected the wages he pays his clerical employees, or had been offset by advances in law-office technology or changes in the standards and procedures of the Social Security Administration that made it cheaper to litigate claims for disability benefits.

That said, a fee of $125 for legal services rendered in 2009 in a social security disability appeal seems awfully low, especially when multiplied by the cut-down level of hours allowed by the district judge to yield a total fee award of $6,625. Can a contested social security case really be litigated to judgment in a district court at a cost in legal fees of so minute an amount? Even at $170 an hour the total fee award would be only $9,010. In the circumstances, as we have explained, it was not improper for the lawyer to request the cost of living increase for the first time in his reply brief. The judge's stated reason for rejecting the enhancement—that the request was untimely—was thus invalid. His mistake in invoking forfeiture, and the meagerness of the fee award, which resulted in part from that mistake, persuade us that he should take a further look at the plaintiff's request for a cost of living adjustment.

But that should be the entire scope of the remand. The plaintiff's lawyer mentioned nothing other than inflation

that might justify a fee award above the statutory pre-sumptive ceiling. It is doubtful that he could have identi-fied another justification in this case.

The Supreme Court has held that the other special factor mentioned in the statute—"the limited availability of qualified attorneys for the proceeding involved"—is to be interpreted narrowly, as being limited to necessary skills or knowledge specialized to the area of law in question, and that any nonenumerated special factor must likewise be specialized to that area of law and so can't be just a factor of "broad and general application" such as "the 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of coun-sel,' and 'the results obtained.'" *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

Rarely are special factors other than the two enumer-ated in the statute invoked. Some courts think undue litigiousness by the government such a factor, e.g., *Jean v. Nelson*, 863 F. 2d 759, 776 (11th Cir. 1988), but usually that would just increase the number of hours the plaintiff's lawyer had to spend on the case rather than the hourly rate. Controversy in the wake of the Supreme Court's decision in *Pierce v. Underwood* has focused on whether a specialized legal practice is ipso facto a special factor warranting a fee above the statutory fee—the position of the Ninth Circuit, e.g., *Nadarajah v. Holder*, 569 F.3d 906, 912-14 (9th Cir. 2009) (immigration and habeas corpus)—or whether, at the opposite extreme, the specialty must be one requiring training in a field outside American law—the position of the Fifth and

D.C. Circuits. See, e.g., *In re Sealed Case 00-5116*, 254 F.3d 233, 235-36 (D.C. Cir. 2001); *Estate of Cervin v. Commissioner of Internal Revenue*, 200 F.3d 351, 355 (5th Cir. 2000)).

Neither extreme is attractive. Most lawyers are specialists; if being a specialist is a sufficient ground for a fee award above the statutory presumptive ceiling, the ceiling is a dead letter. But to confine the limited-availability special factor to specialties requiring training outside of American law is too confining. Judge Boudin proposed an attractive middle ground in his opinion for a panel of the First Circuit in *Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000), when he said that "the statute does not assign extra compensation by 'fields' but by asking the practical question whether in the case at hand lawyers qualified to handle the case can be found for $125 [per hour] or less . . . . [I]f a plaintiff can show that a particular . . . kind of case . . . requires for competent counsel someone from among a small class of specialists who are available only for [more than $125] per hour, that seems to us enough to meet the language of the statute, its purpose, and the Supreme Court's gloss [in *Pierce*]." Our opinions are consistent with Judge Boudin's formulation, *Flouriou v. Gonzales*, *supra*, 498 F.3d at 749; *Muhur v. Ashcroft*, *supra*, 382 F.3d at 656; *Raines v. Shalala*, *supra*, 44 F.3d at 1361, if not quite so crisp. (For an exhaustive review of the dizzying array of alternative positions in the courts of appeals, see *Former Employees of BMC Software, Inc. v. U.S. Secretary of Labor*, 519 F. Supp. 2d 1291, 1347-52 (Ct. Int'l Trade 2007).)

It might seem that because the cost of living special factor is not automatic, the two enumerated special factors merge; the lawyer arguing for a cost of living increase must show limited availability of lawyers able to handle such a case. But that is not correct. Inflation might have an impact across a range of fields of practice that would make it difficult to hire a competent lawyer even in a rather routine case in a field of law by no means esoteric; in such a situation a fee above the statutory fee might well be justified. When inflation is not a factor, the lawyer does have to show that there is something special about the particular type of case that justifies the higher fee. *That* special factor has not been invoked in this case.

And so on remand the plaintiff's lawyer will have to show that without a cost of living increase that would bring the fee award up to $170 per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case.

A final point: the district court ordered the fee award paid to the lawyer rather than to his client, and the government objects, citing *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), where the Supreme Court held that the statutory fee entitlement belongs to the party rather than to the party's lawyer. But the plaintiff in this case had assigned her claim to a fee award to her lawyer in advance, and, so far as appears, that was not the case in *Ratliff*, where the government wanted to deduct from the fee award

a debt she owed. Some language in the Supreme Court's opinion suggests that assignment would make no difference: "The fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute 'awards' the fees directly to the attorney." *Id.* at 2526. But elsewhere the opinion notes that the government "often paid EAJA fees directly to attorneys in cases in which the prevailing party had assigned its rights in the fees award to the attorney (which assignment would not be necessary if the statute rendered the fees award payable to the attorney in the first instance) . . ., [though it] has since continued the direct payment practice only in cases where 'the plaintiff does not owe a debt to the government *and assigns the right to receive the fees to the attorney*.'" *Id.* at 2529. The language we've italicized suggests that if there is an assignment, the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer. There is no indication of that in this case, so to ignore the assignment and order the fee paid to her would just create a potential collection problem for the lawyer. See *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment, Inc.*, 89 F.3d 574, 579 (9th Cir. 1996).

Even if our interpretation of *Astrue v. Ratliff* is incorrect and the judge should not have ordered direct payment of the fee award to the lawyer, this cannot help the government. For it is seeking to alter the judgment and it cannot do that without having filed a cross-appeal, e.g., *American Bottom Conservancy v. U.S. Corps of Engineers*,

2011 WL 2314757, at *7 (7th Cir. June 14, 2011), which it has not done. On the contrary, it urges us in the conclusion of its brief to affirm the district court's judgment—having said a few pages earlier that the judgment is incorrect because it ordered payment to the wrong person!

REVERSED AND REMANDED.