In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 17-3179

STACI HARRINGTON,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee,*

———————————

No. 17-3194

ANDREW BANKS,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeals from the United States District Courts for the
Southern District of Indiana, Terre Haute Division, and the Northern
District of Indiana, Ft. Wayne Division.
No. 2:16-cv-129 — **Jane Magnus-Stinson**, *Chief Judge*, and
No. 1:15-cv-400, **Susan L. Collins**, *Magistrate Judge*.

———————————

ARGUED SEPTEMBER 5, 2018 — DECIDED OCTOBER 10, 2018

————————————

Before KANNE, SYKES, and ST. EVE, *Circuit Judges*.

KANNE, *Circuit Judge*. The Commissioner of Social Security separately denied benefits to Staci Harrington and Andrew Banks. Both individuals sought judicial review of those decisions. To that end, each separately engaged the services of The de la Torre Law Office LLC, which agreed to represent them in federal court. In exchange, the two plaintiffs assigned to counsel any legal fees to which they might be entitled under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). After successfully prosecuting their cases, the plaintiffs obtained the statutory fee awards.

But that was not the end of the story. The Treasury Department, which had the responsibility of processing the payments, determined that both litigants had outstanding debts to various government entities. Rather than paying out the fees directly, it reduced the litigants' debts by equal amounts under the Treasury Offset Program, 31 C.F.R. § 285. The attorneys received nothing. In response, the parties brought these appeals, which we have consolidated because they pose the same legal questions. *See Harrington v. Berryhill*, 876 F.3d 889 (7th Cir. 2017). We believe it would be imprudent to entertain new administrative claims that are only minimally related to the judgments, so we decline to exercise ancillary jurisdiction over the plaintiffs' collateral challenges to the regulations and instead affirm the district courts' judgments.

## I. BACKGROUND

Both Harrington and Banks are indigent petitioners who filed claims for Social Security Disability Insurance Benefits and Supplemental Security Income in 2014. In each case, the Commissioner found that the petitioner was not disabled and was therefore not entitled to benefits. Both separately sought judicial review of those determinations in district court, and both engaged The de la Torre Law Office LLC to assist with those suits. Because the plaintiffs had limited means, the attorneys conditioned their representation on their clients' agreement to assign any potential award of attorney fees to the law firm under Indiana law. Both plaintiffs were victorious, and the district courts remanded the cases to the Commissioner for reconsideration.

As in many cases involving Social Security, the parties then successfully petitioned the district courts to award attorney fees under EAJA; Harrington received $11,851.04, and Banks received $11,001. Although the plaintiffs requested that the government make its payments directly to the attorneys rather than to their clients, neither district court ordered the government to do so.

Pursuant to the awards, the Social Security Administration ("SSA") submitted payment vouchers to Treasury under 31 U.S.C. § 3325(a). Rather than issuing a direct payment to the "prevailing part[ies]" as envisioned by EAJA, however, § 3325(a) permits Treasury to execute "payment intercepts or offsets" under a provision of the Debt Collection Improvement Act of 1996 ("DCIA"), 31 U.S.C. § 3716. As it processed the payment vouchers, Treasury determined that Harrington had an outstanding debt to the Department of Education that exceeded the sum of her attorney fees. Likewise, Banks was

delinquent on child support obligations administrated by the prosecutor's office in Allen County, Indiana, a debt monitored and administered at the federal level by the Department of Health and Human Services ("HHS"). Under its regulations issued pursuant to the DCIA, Treasury applied an administrative offset to both awards of attorney fees. *See* 31 C.F.R. §§ 285.1, 285.5. Treasury deducted amounts from SSA appropriations and transferred those sums to Education and HHS accounts. In turn, those departments reduced the plaintiffs' outstanding debts by equal amounts, effectively "paying" the litigants as required by the fee awards.

Harrington subsequently filed a motion under Fed. R. Civ. P. 69. That motion pointed to the assignment of fees under Indiana law and requested that the district court order the government to rescind the administrative offset and pay the full amount of the fee award directly to counsel. The district court, citing both *Astrue v. Ratliff*, 560 U.S. 586 (2010) and our decision in *Matthews-Sheets v. Astrue*, 653 F.3d 560 (7th Cir. 2011), *overruled on other grounds by Sprinkle v. Colvin*, 777 F.3d 421 (7th Cir. 2015), denied that motion and upheld the government's action. Banks made no such motion.

Both plaintiffs appealed their cases. They now ask us to do what the district courts would not do: compel the government to reverse Treasury's administrative offsets, reinstate their prior debts, and pay their lawyers.

## II. ANALYSIS

We review an order to award attorney fees under EAJA for abuse of discretion. *See Sprinkle*, 777 F.3d at 424. We review all questions of law involved in the interpretation of EAJA *de novo*. *Id.*

The shadow of *Ratliff* looms over this appeal. In that case, the Court held that the plain text of EAJA requires courts to award fees to the "prevailing litigant," not to the litigant's attorney. 560 U.S. at 596. The award is "thus subject to offset where the litigant has relevant federal debts." *Id.* In essence, the statute "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Id.* at 598 (quoting *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990)). Instead, the Court observed that it is usually "nonstatutory (contractual and other assignment-based) rights that typically confer upon the attorney the entitlement to payment," and that those contractual arrangements would be unnecessary if EAJA required a direct payment to attorneys. 560 U.S. at 598.

That language raises the question of whether an assignment or other contractual claim to the fees might change the calculus. The plaintiff in *Ratliff* had no such assignment in hand, so the Court did not give the possibility any further thought. In dicta, we observed the following year in *Matthews-Sheets* that *Ratliff* "suggests that if there is an assignment, the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer." 653 F.3d at 565. Again, however, we did not definitively answer the question.

The plaintiffs pose it to us directly today. The attorneys in these cases have assignments in hand, which they contend give them priority over any government claim under Indiana law. In addition, they challenge the offsets on the basis of several other theories. First, they contend that even if their assignments do not enable them to take the awards free and clear of the government's claims, their state law attorney's

liens do. Second, they attempt to distinguish *Ratliff* by attack-
ing the offsets on grounds other than EAJA: they argue that
Treasury lacked the statutory authority to promulgate the off-
set regulations; that the offsets violate the equitable Rule of
Mutuality; that they violate the Takings Clause of the Fifth
Amendment; that they violate the Judgment Setoff Act of
1875; and finally that the offsets violate Article III of the Con-
stitution as an improper executive intrusion into the judicial
power to issue judgments.[1]

Because *Ratliff* did not consider any of these questions,
they contend, it does not control here, and we must give the
plaintiffs a fresh opportunity to challenge the administrative
offsets of attorney fees.

### A. The district courts properly awarded attorney fees

Before we reach any of those issues, we must first assess
the threshold question of whether the district courts properly
awarded fees under EAJA. The statute directs that courts
"shall award to a prevailing party other than the United States
fees and other expenses … incurred by that party in any civil
action … , including proceedings for judicial review of agency
action … unless the court finds that the position of the United
States was substantially justified." § 2412(d)(1)(A). Both dis-
trict courts granted the plaintiffs' motions for fees upon re-
quest. *See Harrington v. Berryhill*, No. 2:16-cv-00129-JMS-MJD,
2017 WL 2502456 (S.D. Ind. Jun. 9, 2017); *see also Banks v.*

---

[1] We note that Banks did not raise the constitutional arguments in the
district court, and that Harrington raised them only briefly in her reply to
the motion for summary judgment. These arguments are likely waived,
but we need not address that issue because we decline to exercise ancillary
jurisdiction to consider them.

*Comm'r of Soc. Sec.*, No. 1:15-cv-00400-SLC, 2017 WL 3634300 (N.D. Ind. Aug. 23, 2017). No party has brought a challenge to the calculation of those fees on appeal, and we see no reason to disturb the findings of the district courts.

Instead, the plaintiffs contend that the district courts erred by failing to direct the government to render payment directly to the attorneys, as both parties requested in their EAJA petitions and Harrington reiterated in a subsequent Rule 69 motion requesting that the district court order "the Commissioner to pay any EAJA award directly to Plaintiff's counsel" and "[d]eclare that the Government may not execute Plaintiff's EAJA fee judgment through an administrative offset … against Plaintiff's alleged federal debts." (S.D. Ind. R. 28 at 10; 37 at 2).

There is no question that the district courts and SSA complied with the requirements set forth in the statute. The courts awarded fees to the "prevailing party" as the statute directs, and *Ratliff* requires that such payment go directly to the litigant rather than to her attorney. *See* 560 U.S. at 591 ("We have long held that the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant."). SSA paid money out of its appropriations according to the court orders, and the prevailing litigants received value through the reduction of their outstanding debts.

Although the plaintiffs contend that a withholding of payment (and subsequent reduction of debts) is not a "payment" under EAJA, we disagree. The plaintiffs cite to *Pam-to-Pee v. United States*, 187 U.S. 371, 382 (1902), to establish the proposition that the district courts, "which render[ed] a judgment in favor of A against B," also have the jurisdiction "to inquire

whether that judgment has been rightly executed by a pay-ment from B to C." We agree that the district courts had such jurisdiction, and therefore we have jurisdiction to review the inquiry that they made. However, *Ratliff* approved the execu-tion of an EAJA award against the United States even though that award was subject to offset, effectively paying C (another federal agency) in order to satisfy an obligation to B (Ratliff's client).

The economic realities of this transaction confirm that in-quiry, as Harrington and Banks have each received more than $11,000 in economic value through a reduction of their out-standing debts. The plaintiffs contend that dicta in *United States v. Isthmian Steamship Co.*, 359 U.S. 314, 318–19 (1959), firmly distinguishes between the concepts of payment and withholding payment to offset a prior debt. But *Isthmian* was primarily about admiralty law and whether a setoff in a non-admiralty context could serve as a defense to suit in admiralty jurisdiction. *See* 359 U.S. at 320 ("[W]e must ascertain whether admiralty practice permits private parties to defend by setting up claims arising out of separate and unrelated transactions between the parties."). This case has nothing to do with admi-ralty law, and the Court made no distinction between pay-ment and offset in *Ratliff. See also Pan-Atlantic S.S. Corp. v. United States*, 245 F. Supp. 731, 733 (D. Del. 1965) ("The treat-ment of the defense of setoff in *Isthmian* is demonstrative of a provision peculiar to admiralty."); 31 C.F.R. § 285.5(e)(9) ("When an offset occurs, the debtor has received payment in full for the underlying obligation represented by the pay-ment."). Following *Ratliff*, we hold that a reduction of a liti-gant's prior debts to the government by administrative offset constitutes payment to the prevailing party under EAJA.

The collateral attacks that plaintiffs' counsel raise on non-EAJA grounds do not affect the fact that the judgments have been executed pursuant to the terms of the statute as interpreted by *Ratliff*. To the extent that EAJA controls the award and processing of attorney fees, all parties to the present litigation have been satisfied.

*B. We decline to exercise ancillary jurisdiction over the remaining claims*

But the plaintiffs' attorneys received no such satisfaction. They accurately point out that *Ratliff* did not address questions of the interaction between EAJA and state law or consider collateral constitutional or statutory attacks to the Treasury Offset Program, and they now ask us to consider those challenges in the first instance. However, several factors caution us against answering those questions today, and we decline to do so.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). These cases arose in the district courts under the jurisdictional provision contained in 42 U.S.C. § 405(g). That section contains a clear congressional grant of authority to courts to review actions and determinations of the Commissioner and to remand a case for further administrative action. Likewise, 28 U.S.C. § 2412(d) authorizes courts to award fees to parties challenging agency actions. Our jurisdiction to review the district courts' orders stems from 28 U.S.C. § 636(c) (permitting us to review the actions of magistrate judges to whose supervision the parties have consented, as in the case of Banks) and 28 U.S.C. § 1291 (permitting us to review the

final decisions of district courts). In both cases, the extent of our appellate jurisdiction is limited by the extent of the subject matter jurisdiction exercised by the courts of first instance. None of these jurisdictional grants expressly cover the collateral challenges presented in this appeal.

The plaintiffs suggest that, even if we believe their claims do not fall squarely within the scope of our subject matter jurisdiction, we might exercise ancillary jurisdiction to enforce the judgments as they desire. That doctrine "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378. The Supreme Court has noted that one of the proper uses of ancillary jurisdiction is "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate it decrees." *Id.* at 380. The plaintiffs here urge us to "vindicate [our] authority" and "effectuate [our] decrees" by invalidating Treasury's offsets and directing the payments to their lawyers, whom they believe are the appropriate recipients.

In *Kokkonen*, the Supreme Court found that the district court had no ancillary jurisdiction to resolve a dispute over compliance with a settlement agreement. After approving the agreement, the district court dismissed the case with prejudice. Later on, a dispute arose between the parties as to their obligations under the settlement agreement. The parties returned to the same district court seeking to resolve that new dispute. The Supreme Court, however, determined that the new issue was essentially an entirely new state law breach of contract claim and that federal courts lacked the power to resolve it. *Id.*

We have considered the use of ancillary jurisdiction to resolve a dispute over attorney fees in the past. In *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294 (7th Cir. 1995), the parties to the original litigation had already settled and removed themselves by the time the case reached us on appeal. The only remaining dispute was between two of the plaintiff's attorneys, who both laid claim to the fee awarded. In that case, decided one year after *Kokkonen*, we considered the approaches of both the Second and Fourth Circuits to similar problems. The Second Circuit approved the district court's exercise of ancillary jurisdiction to resolve a dispute over fees in *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir. 1977), while the Fourth Circuit declined to exercise jurisdiction over a nearly identical case in *Taylor v. Kelsey*, 666 F.2d 53 (4th Cir. 1981). Our reading, however, found that there was no conflict in the reasoning of the two cases: both were highly fact-specific analyses that led to opposite conclusions because of slight differences in circumstances. *See Baer*, 72 F.3d at 1300–01. In *Grimes*, the district court had ordered the fees to be deposited in an escrow account pending resolution of the dispute and therefore had affirmative control over the funds. The settlement agreement on which the dispute was premised also included an explicit provision authorizing the same district court to resolve any resulting arguments over its execution. On the contrary, neither of those factors were present in *Taylor*, and the dispute resembled a run-of-the mill breach of contract claim between citizens of the same state. For those reasons, the exercise of ancillary jurisdiction was improper. We determined that the dispute in *Baer* more

closely resembled that in *Grimes* and therefore opted to exercise ancillary jurisdiction to resolve it.[2] *Id.*

In sum, the cases seem to make the exercise of ancillary jurisdiction discretionary based on the extent to which the new issues are closely connected to the original dispute, whether there exists some independent basis for jurisdiction over the new claims, and whether the facts suggest it would be prudent to do so. *See Baer*, 72 F.3d at 1301 n.8 ("Because neither party has challenged the district court's exercise of its [ancillary] jurisdiction, it is sufficient to decide that [ancillary] jurisdiction existed. We need not determine whether the court's decision to exercise that discretion was appropriate."); s*ee also Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 717 (7th Cir. 2013)

---

[2] We note that there is some confusion between the terms "ancillary jurisdiction" and "supplemental jurisdiction" running through the case law. They seem to be used interchangeably in some circumstances. Supplemental jurisdiction is codified at 28 U.S.C. § 1367 and applies most often to entirely separate, free-standing claims that a court would not have jurisdiction to hear, but which are appended at the outset of litigation to a primary claim over which the court has original jurisdiction granted by statute. *Compare Baer*, 72 F.3d at 1299–1301 (comparing both terms and applying ancillary jurisdiction to reach its result) *with Humphrey v. United States*, 787 F.3d 824, 826 (7th Cir. 2015) (distinguishing *Baer* while analyzing § 1367 as applied in a case arising under diversity jurisdiction). On the other hand, ancillary jurisdiction is not codified by statute. The Supreme Court clarified the doctrine considerably in *Kokkonen*. *See* 511 U.S. at 378–80 ("The doctrine … can hardly be criticized for being overly rigid or precise."). Ancillary jurisdiction exists "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 579–80 (citations omitted). At the request of the parties, our analysis is limited to ancillary jurisdiction, despite the fact that some of the case law we have quoted refers to supplemental jurisdiction.

("District courts *may* exercise [ancillary] jurisdiction over disputes between attorneys and clients concerning costs and fees for representation in matters pending before the district court." (emphasis added)).

The claims at issue today are essentially free-standing challenges to the actions of an agency that is not a party to this lawsuit by attorneys who themselves are not the original parties. As the plaintiffs themselves said, "[c]hallenges to EAJA offset … are challenges to Treasury decision-making." (Appellants' Br. at 22.) The plaintiffs, or rather their attorneys, frame this appeal as a challenge to Treasury's authority to promulgate 31 C.F.R. § 285.5. While the claim generally arises out of the litigation, the legal claims that the plaintiffs' attorneys put forward "inject so many new issues that [they create] functionally a separate case." *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997).

A new suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, is the proper vehicle for this litigation. That statute provides the legal framework for challenging agency actions the plaintiff believes to be unlawful because they were "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations." § 706(2)(B)–(C). Such a suit would also give Treasury the opportunity to defend its rule as a party to the case and would operate under the clearer standards of review and deference suitable to a challenge to agency action. Indeed, the plaintiff in *Ratliff*, the attorney challenging the offset, brought her own suit under the APA rather than continue her client's litigation in order to avoid the same pitfalls. *See* Petition for a Writ of Certiorari at ¶ 3.a, *Ratliff*, 560 U.S. 586 (No. 08-1322), 2009 WL 1155415 at *5.

A separate suit would also alleviate the potential for a conflict of interest between the attorneys, who are the real party in interest in this case (as counsel conceded at oral argument), and the clients whom they claim to represent on appeal. Because victory for the attorneys would necessarily result in the reinstatement of their clients' government debts (and in the case of Banks, recoupment of money already paid to the mother of his child), we hesitate to permit the attorneys to go forward in their clients' names.

We stress that our decision today indicates no opinion on the merits of the various legal theories the plaintiffs have proposed to us. These are important questions that deserve their day in court. In particular, we sympathize with the practical effects that administrative offsets have on the ability of indigent petitioners to bring meritorious lawsuits before federal courts. "[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Comm'r v. Jean*, 496 U.S. 154, 163 (1990). As three members of the Supreme Court noted in a concurrence to *Ratliff*, "[s]ubjecting EAJA fee awards to administrative offset for a litigant's debts will unquestionably make it more difficult for persons of limited means to find attorneys to represent them." 560 U.S. at 600–01 (Sotomayor, J., concurring). The fact that EAJA awards are often relatively small sums also removes the incentive for attorneys to challenge the offsets, further undercutting the effectiveness of the law. *Id.* at 600. Nevertheless, Justice Sotomayor and her colleagues determined that regardless of the policy outcomes, the text of the law clearly required upholding the offsets. They left questions of policy to Congress.

### III. CONCLUSION

Another court sitting under another statutory grant of jurisdiction may determine that some provision of the Constitution or a statute forbids administrative offsets of EAJA awards. But this case is not a suitable vehicle in which to assess those questions, and we will not do so. The district courts properly granted attorney fees under EAJA, and the government properly applied those fees to the plaintiffs' outstanding debts in accord with *Ratliff* and the Treasury Offset Program as it currently stands. Those questions form the extent of our jurisdiction on appeal, and we need not exercise ancillary jurisdiction to reach collateral attacks that are better suited for a separate action under the APA. For those reasons, the judgments are AFFIRMED.