In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-1481

KATHLEEN O'DONNELL,

*Plaintiff-Appellant,*

*v.*

ANDREW M. SAUL, Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 cv 8931 — **Susan E. Cox**, *Magistrate Judge.*

———————————

ARGUED DECEMBER 4, 2020 — DECIDED DECEMBER 29, 2020

———————————

Before KANNE, WOOD, and SCUDDER, *Circuit Judges.*

KANNE, *Circuit Judge.* After Kathleen O'Donnell success-fully challenged the denial of her application for disability benefits, her lawyer was awarded attorney fees under a series of statutes. But for reasons too complex for an introduction, the magistrate judge's order awarding fees puts the attorney in the unenviable position of having to seek part of what he is owed from his disabled client rather than the Social Security Administration. He doesn't want to do that, so he appealed.

The question we face is whether the magistrate judge abused her discretion in entering the order and denying the attorney's request that she alter it. The facts are complicated, but the answer is clear. The magistrate judge acted well within her discretion, so we affirm.

## I. BACKGROUND

The facts of this case make little sense without some understanding of the relevant law. We thus summarize the key statutory provisions first, and then we'll proceed to the facts.

### A. Relevant Statutes

This case implicates a handful of interrelated federal statutes that govern the award of fees to those who successfully represent Social Security claimants in administrative and court proceedings.

First, 42 U.S.C. § 406(a) authorizes the Social Security Administration ("SSA") to award a "reasonable fee" to attorneys and other persons who successfully represent claimants in administrative proceedings.

Second, 42 U.S.C. § 406(b)(1) provides that, if an attorney successfully represents a claimant in federal court:

> the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may … certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits.

This "25% cap applies only to fees for representation before the court, not the agency" under § 406(a), *Culbertson v.*

*Berryhill*, 139 S. Ct. 517, 522 (2019), so an attorney may ultimately be awarded more than 25% of past-due benefits under §§ 406(a) and (b)(1) combined. The SSA Commissioner's longstanding policy, however, is to withhold only 25% of a claimant's past-due benefits for payment of *all* fees that may be awarded under § 406. *See id.* at 523 ("[T]he agency withholds a single pool of 25% of past-due benefits for direct payment of agency and court fees."). Thus, the collection of any § 406 fees above and beyond 25% of past-due benefits is generally a matter between attorney and client.

Third, 42 U.S.C. § 406(b)(2) makes it a misdemeanor for any attorney to "charge[], demand[], receive[], or collect[]" a fee for court representation in excess of that permitted under § 406(b)(1). (Note that this applies only to fees for *court* representation, not for *agency* representation under § 406(a).)

Finally, the Equal Access to Justice Act ("EAJA") provides that, in certain circumstances, "a court may award reasonable fees and expenses of attorneys" to parties who prevail "in any civil action brought by or against the United States or any agency" thereof. 28 U.S.C. § 2412(b). When the EAJA was enacted in 1980, though, it presented a conundrum for Social Security attorneys, who wondered if they were committing a misdemeanor under § 406(b)(2) by collecting EAJA fees in addition to court fees under § 406(b)(1). (Again, the collection of agency fees under § 406(a) posed no problem.) So Congress amended the EAJA in 1985 to clarify that an attorney does not violate § 406(b)(2) by accepting an EAJA fee in addition to a court fee under § 406(b)(1)—"but only if, where the claimant's attorney receives fees for the same work under both [§ 406(b)(1)] and [the EAJA], the claimant's attorney refunds to the claimant the amount of the smaller fee." Pub. L. No. 99-

80, § 3, 99 Stat. 183 (Aug. 5, 1985). We refer to this amendment as the "Savings Provision."

Also note that, whereas § 406 fees are paid directly to the claimant's attorney out of the claimant's past-due benefits, EAJA fees are paid out of agency funds to the claimant, who may assign them to her attorney. *E.g.*, *Culbertson*, 139 S. Ct. at 520; *Astrue v. Ratliff*, 560 U.S. 586, 594–95, 597 (2010); *McGraw v. Barnhart*, 450 F.3d 493, 497 (10th Cir. 2006).

And now we turn to the facts of this case.

*B. Factual and Procedural Background*

In December 2017, Kathleen O'Donnell—represented by her attorney, John Horn ("Counsel")—filed a federal civil action challenging the SSA's denial of her application for Social Security disability insurance benefits. In February 2019, the magistrate judge remanded the case to the SSA for further administrative proceedings. On April 18, 2019, while those proceedings were pending, the magistrate judge awarded O'Donnell $7,493.06 in EAJA fees. The SSA paid the fee to Counsel, honoring his fee assignment with O'Donnell.

On remand, an administrative law judge found that O'Donnell was disabled, and the SSA then determined in October 2019 that she was eligible for benefits dating back to August 2016. Thereafter, the Commissioner withheld 25% of O'Donnell's past-due benefits, or $14,515.37, for possible future payment of § 406 fees.

In January 2020, Counsel filed an unopposed motion for authorization to charge and collect $14,515.37 in attorney fees under § 406(b). But because Counsel had already received the $7,493.06 EAJA award in April 2019—and as we've seen, an attorney cannot keep fees awarded under both the EAJA *and*

§ 406(b); the smaller award belongs to the client—Counsel proposed that the magistrate judge simply let him keep the EAJA fee and "direct the Commissioner to pay [him the] balance" of the § 406(b) award, or "$7,022.31 after the EAJA offset." Counsel indicated in his motion that this method (which we'll call the "netting" method) would leave $7,493.06 in the Commissioner's hands for future payment of § 406(a) agency fees while also providing Counsel with the full $14,515.37 in court fees allowable under § 406(b).

On January 10, 2020, the court issued a minute entry stating that Counsel's "[u]nopposed motion for attorney's fees … is granted." On January 28, however, the magistrate judge issued a new order *sua sponte*, which again granted Counsel's motion, but which added:

> Plaintiff's attorney, John E. Horn, is awarded $14,515.37 in 42 U.S.C. § 406(b) fees, payable by the [SSA] from Plaintiff's past-due Social Security disability benefits. From this amount, counsel will refund to Plaintiff the amount of $7,493.06, equal to the EAJA attorney fees recovered by attorney Horn for representation of Plaintiff in Court.

This new order, in other words, rejected the netting method requested by Counsel. Instead, it awarded Counsel the full $14,515.37 under § 406(b) and required him to return to O'Donnell the EAJA award that he'd already received.

On February 19, 2020, Counsel filed a motion under Federal Rule of Civil Procedure 59(e) asking the court to amend the part of the order "requiring a literal refund of EAJA fees" rather than adopting Counsel's preferred netting approach, "which would leave funds in the hands of the Commissioner of Social Security for payment of 42 U.S.C. § 406(a) fees for

representation in front of the [SSA]." The magistrate judge denied the motion the next day, explaining that "[n]ot only is the [netting] method suggested by counsel 'disfavored' …, but there is simply no authority that would allow the Court to implement the scheme counsel wishes to effectuate." Thus, Counsel would have to look to O'Donnell, not the Commissioner, to satisfy any future § 406(a) agency fees.

On March 20, 2020, Counsel appealed (in O'Donnell's name) the court's January 28 order and its denial of his Rule 59(e) motion. Evidently, he would like to avoid asking his disabled client to pay any agency fees awarded under § 406(a) and would prefer that those funds be held, and eventually paid, by the Commissioner. And as it happens, on April 14, 2020, an administrative law judge did award Counsel $4,925.21 under § 406(a) for his services in front of the SSA.[1] That means Counsel is authorized to retain a total of $19,440.58 under §§ 406(a) and (b) combined—but as things stand, he must seek $4,925.21 of that amount from O'Donnell.

## II. ANALYSIS

We review the magistrate judge's order awarding fees under 42 U.S.C. § 406(b) and her order denying Counsel's Rule 59(e) motion for an abuse of discretion. *Billups v. Methodist Hosp. of Chi.*, 922 F.2d 1300, 1305 (7th Cir. 1991); *McGuire v. Sullivan*, 873 F.2d 974, 977 (7th Cir. 1989). As relevant here, "[a]n abuse of discretion occurs if the district court reaches erroneous conclusions of law … ." *Gastineau v. Wright*, 592

---

[1] This award came a month after Counsel filed this appeal, so it is not in the record. But both Counsel and the Commissioner refer to it in their briefs and vouch for its existence, and in any event, it merely serves to shed more light on the situation Counsel finds himself in.

F.3d 747, 748 (7th Cir. 2010). "The court … addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2818 (3d ed. 2012); *Foman v. Davis*, 371 U.S. 178, 181 (1962)).

### A. Jurisdiction

The first issue we must address is whether we have jurisdiction over this appeal.[2] The Commissioner argues (with no small amount of equivocation) that we "may have subject-matter jurisdiction," but "the matter is not entirely clear" because "Counsel has not provided [sufficient] information." In particular, the Commissioner argues that Counsel—the real party in interest here—"may not have" suffered any injury in fact sufficient to confer subject-matter jurisdiction: Counsel has not explained whether O'Donnell has refused to pay him the remaining $4,925.21 or even if he's *asked* her if she would pay it. And even if there were a real case or controversy between Counsel *and his client* (the argument goes), that's of no concern to the defendant in this case—the Commissioner—who has no direct stake in the outcome.

We commend the Commissioner for raising potential jurisdictional issues. *See Espinueva v. Garrett*, 895 F.2d 1164, 1166 (7th Cir. 1990) ("Every litigant has an obligation to bring jurisdictional problems to the court's attention."). But we conclude that we have jurisdiction over this appeal because it concerns matters ancillary to the underlying dispute.

---

[2] The Commissioner concedes that "[t]his appeal is from a final order that disposes of all parties' claims" and does not seriously dispute that we have jurisdiction under 28 U.S.C. § 1291.

The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). "The Supreme Court has noted that one of the proper uses of ancillary jurisdiction is 'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Harrington v. Berryhill*, 906 F.3d 561, 567 (7th Cir. 2018) (quoting *Kokkonen*, 511 U.S. at 380).

We, like many other courts, "have considered the use of ancillary jurisdiction to resolve a dispute over attorney fees in the past." *Id.* (citing *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294 (7th Cir. 1995)); *see also Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 717 (7th Cir. 2013) ("[C]ourts may exercise [ancillary] jurisdiction over disputes between attorneys and clients concerning costs and fees for representation in matters pending before the … court."); *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982) ("Determining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.").

These and other cases "seem to make the exercise of ancillary jurisdiction discretionary based on the extent to which the new issues are closely connected to the original dispute, whether there exists some independent basis for jurisdiction over the new claims, and whether the facts suggest it would be prudent to do so." *Harrington*, 906 F.3d at 568.

The Commissioner has pointed to no case with facts resembling these where the court considered and rejected ancillary, or even subject-matter, jurisdiction. But there are plenty

in which courts did not hesitate to assume jurisdiction. *E.g.*, *Martinez v. Berryhill*, 699 F. App'x 775, 776 (10th Cir. 2017) (permitting a law firm, "as the real party in interest," to appeal from the district court's order requiring that it refund EAJA fees to its client); *Lay v. Comm'r of Soc. Sec.*, 635 F. App'x 301, 303 (6th Cir. 2016); *Crawford v. Astrue*, 586 F.3d 1142, 1146 (9th Cir. 2009); *McGraw*, 450 F.3d at 497.

And the Supreme Court did not warn of a jurisdictional problem in an appeal brought by plaintiffs' attorneys who, while not the named petitioners, were "the real parties in interest … seek[ing] to obtain higher fee awards under § 406(b)." *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002). The Court also noted that, although the Commissioner "has no direct financial stake in the answer to the § 406(b) question," he still "plays a part in the fee determination resembling that of a trustee for the claimants." *Id.* (citing *Lewis v. Sec'y of HHS*, 707 F.2d 246, 248 (6th Cir. 1983)).

So generally speaking, courts *may* exercise ancillary jurisdiction over fee disputes. As for whether "it would be prudent to do so" in this case, *Harrington*, 906 F.3d at 568, we note that this is not the typical sort of standalone dispute over fees that might arise between an attorney and his client after litigation has run its course. Rather, it is an incidental challenge to, and direct appeal of, the district court's interpretation and application of law in its order awarding fees for the services the plaintiff's attorney rendered throughout these proceedings. And it is different from *Harrington*, which rejected ancillary jurisdiction, in important ways: it does not present "freestanding challenges to the actions of an agency that is not a party to this lawsuit," *id.*, it is not "frame[d] … as a challenge to [the SSA's] authority to promulgate" any regulations, *id.*,

and it does not "inject so many new issues that [it is] functionally a separate case," *id.* (quoting *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997)).

We conclude that "the facts suggest it would be prudent" for us to exercise our ancillary jurisdiction here. *Id.* And while we naturally "hesitate to permit … attorneys to go forward in their clients' names," *id.*, "[u]nder these circumstances, we hold that this dispute was part of the same 'case or controversy' as the underlying litigation," *Baer*, 72 F.3d at 1301; *see* 28 U.S.C. § 1367. We therefore proceed to the merits.

*B. The Magistrate Judge's Order*

The January 28, 2020 order did two things: (1) award Counsel "$14,515.37 in 42 U.S.C. § 406(b) fees, payable by the [SSA] from Plaintiff's past-due Social Security disability benefits," and (2) order Counsel to "refund to Plaintiff the amount of $7,493.06, equal to the EAJA attorney fees recovered by [Counsel] for representation of Plaintiff in Court." Again, the effect of the order is to drain the "pool" of past-due benefits withheld by the Commissioner and require Counsel to seek his § 406(a) fees from O'Donnell.

Counsel argues that the court abused its discretion because it "misinterpreted 42 U.S.C. § 406(b)(1) to make it harder, not easier, for attorneys to collect their fees in Social Security cases." He also asserts that the district court "admitted" that the netting method "is permissible" and offers a slew of reasons why that method is better policy.

The order was entered pursuant to statute, and "[t]he starting point in statutory interpretation is 'the language of the statute itself.'" *Ardestani v. INS*, 502 U.S. 129, 135 (1991) (quoting *United States v. James*, 478 U.S. 597, 604 (1986)). So we

turn first to the language of the Savings Provision, which pro-vides that an attorney does not commit a misdemeanor by ac-cepting fees under both the EAJA and § 406(b) for the same work, "but only if … the claimant's attorney refunds to the claimant the amount of the smaller fee." Pub. L. No. 99-80, § 3, 99 Stat. 183 (Aug. 5, 1985).

There's not much room to argue about the natural reading of this language. It expressly contemplates a "refund" of the smaller award. A "refund" is a "return of money to a person who overpaid." *Refund*, Black's Law Dictionary (11th ed. 2019). Here, that person is identified as the claimant. (Which makes sense; again, the Commissioner acts as a sort of trustee for the claimant, *Gisbrecht*, 535 U.S. at 798 n.6, so it's the claim-ant, not the Commissioner, who has "overpaid".) And "[t]he obligation to make the refund is imposed on the attorney." *Jackson v. Comm'r of Soc. Sec.*, 601 F.3d 1268, 1272 (11th Cir. 2010); *see Gisbrecht*, 535 U.S. at 789 ("[T]he claimant's attorney must refund to the claimant the amount of the smaller fee … ."); *Kellems v. Astrue*, 628 F.3d 215, 217 (5th Cir. 2010) ("The attorney must refund to the client the lesser amount of the two awards."); *McGraw*, 450 F.3d at 497 ("[C]ounsel must refund the smaller amount to the claimant.").

So the Savings Provision imposes an obligation on the at-torney—not the court, not the Commissioner—to return the amount of the smaller fee to the claimant, and "[t]here is no language in the Savings Provision that requires courts to take any action with respect to the refund" or "to order a specific refund procedure." *Jackson*, 601 F.3d at 1272.

Thus, the Eleventh Circuit in *Jackson* held that "a refund paid by the claimant's attorney directly to the claimant would comply with the EAJA Savings Provision" (even if that court

wasn't "persuaded that such a refund is the only way to comply"). *Id.* at 1273. The Tenth Circuit went further, noting that the netting "method of handling 'refunds' of EAJA fees to a claimant" is "disfavor[ed]," even if "not categorically ruled … out as improper." *Martinez*, 699 F. App'x at 776; *see McGraw*, 450 F.3d at 497 n.2 ("[I]t is more appropriate for counsel to make the required refund to his client, rather than to delegate that duty to the Commissioner.").

Counsel acknowledges that a direct refund from attorney to claimant *can* be permissible under the statute but argues that when a lawyer moves (unopposed) for a § 406(b) award offset by a prior EAJA award, the court cannot order a direct refund instead. That seems to be the Eleventh Circuit's approach. *See Green v. Comm'r of Soc. Sec.*, 390 F. App'x 873, 874 (11th Cir. 2010) (holding that the district court erred in denying the attorney's "request to deduct the EAJA fee from his § 406(b) fee and award him the difference" because "the attorney may choose to effectuate the refund by deducting the amount of an earlier EAJA award from his subsequent [§ 406(b)] request." (quoting *Jackson*, 601 F.3d at 1274)).

But we disagree with that approach given the language of the other statute in play, § 406(b)(1): "the court *may determine and allow* as part of its judgment a reasonable fee" (emphasis added). Counsel claims that the magistrate judge "misinterpreted" this statute, but it plainly vests the court with discretion to award a reasonable fee and determine what that fee is. It certainly does not restrict that discretion by compelling the court to award whatever fee, in whatever form, the lawyer requests. And we agree with the Tenth Circuit's recognition that even if the netting method is permissible under § 406(b)(1), it is "disfavor[ed]" in light of the Savings Provision's language

that anticipates an attorney-to-claimant refund. *Martinez*, 699 F. App'x at 776. We do not think that the magistrate judge's exercise of her statutory discretion to "disapprove[] of th[e netting] practice in this case" could be an abuse of that discretion. *McGraw*, 450 F.3d at 497 n.2.

In sum, we find no statutory requirement that the court order netting in any or all circumstances. Instead, the Savings Provision contemplates a refund by the attorney, and § 406(b)(1) vests the court with discretion to award reasonable fees not exceeding 25% of the claimant's past-due benefits. That's what the court ordered.[3]

The rest of Counsel's argument consists largely of strained readings of the SSA's Program Operations Manual System ("POMS"), which Counsel erroneously refers to as "regulations." "[T]he POMS is a policy and procedure manual that employees of the [agency] use in evaluating Social Security claims and does not have the force and effect of law," even if it might sometimes be persuasive. *Davis v. Sec'y of HHS*, 867 F.2d 336, 340 (6th Cir. 1989); *accord Evelyn v. Schweiker*, 685 F.2d 351, 352 n.5 (9th Cir. 1982); *Raymond v. Barnhart*, 214 F. Supp. 2d 188, 191 (D.N.H. 2002) ("The POMS is not a regulation enacted pursuant to formal rulemaking procedures and therefore does not have binding legal force." (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981))).

---

[3] Even if the court somewhat overstated matters when it said that it had "no authority" to order netting, and even if that statement was an error of law, the court did not abuse its discretion in ordering a direct-refund procedure that hews to the statutory language. Any "misstatements in its decision were harmless and did not lead the court to render an *erroneous judgment*." *Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725, 729 (7th Cir. 1999) (emphasis added).

At any rate, the POMS does not help Counsel here. No-where does it require the Commissioner to offset a § 406(b) award with a prior EAJA award, and nowhere does it prohibit an attorney from asking his client to pay a § 406(a) fee that was awarded without the Commissioner's involvement. (In fact, the POMS permits an attorney to ask his client to deposit money into the attorney's trust account to cover a fee even before the fee is awarded.[4]) And Counsel's argument that the magistrate judge's approach would cause delays because the POMS would require attorneys "to seek a failure to withhold letter from the Commissioner" fails too, as the section Counsel cites applies to cases of "administrative oversight."[5] The Commissioner's practice of withholding only 25% of past-due benefits is long-established policy, not an "omission or error due to inadvertence." *Oversight*, Webster's Third New International Dictionary (1986); *see Culbertson*, 139 S. Ct. at 523.

Which brings us to the remaining policy arguments advanced by both sides. Counsel argues that the netting approach "furthers the purpose of § 406 because it not only avoids double payment of the attorney but makes it easier, not harder, for attorneys to collect their fees … ." The Commissioner responds that, although it has no categorical objection to the netting approach, an attorney-to-claimant refund is a "more straightforward means of achieving the Savings Clause's twin objectives: ensuring that an attorney does not

---

[4] *See* POMS GN 03920.025, https://secure.ssa.gov/apps10/poms.NSF /lnx/0203920025 (last visited Dec. 17, 2020).

[5] POMS GN 03920.055, https://secure.ssa.gov/apps10/poms.nsf/lnx /0203920055 (last visited Dec. 17, 2020).

retain an EAJA fee and a § 406(b) fee for the same work, and putting additional money in the claimant's pocket."

"[T]hese always-fascinating policy discussions are beside the point. The role of this Court is to apply the statute[s] as [they are] written—even if we think some other approach might 'accor[d] with good policy.'" *Burrage v. United States*, 571 U.S. 204, 218 (2014) (quoting *Comm'r v. Lundy*, 516 U.S. 235, 252 (1996)). And the statutes as written in no way preclude a court from awarding an attorney 25% of a claimant's past-due benefits under § 406(b)(1) and requiring the attorney to refund a prior EAJA award to his client. To the contrary, they vest the court with discretion to order just that.

Ultimately, Counsel would prefer that the fees he's earned be held in the secure hands of the federal government rather than by his client. Perhaps he should blame Congress for the way it wrote the statutes, or maybe the SSA for its policies applying them. But the magistrate judge acted within the broad confines of the law, and "[a]ny concerns about a shortage of withheld benefits for direct payment and the consequences of such a shortage are best addressed to the agency, Congress, or the attorney's good judgment"—not to this court. *Culbertson*, 139 S. Ct. at 523.

### III. CONCLUSION

Counsel is correct that the netting method is permissible. And he might be right that that method is less convoluted than the one ordered by the magistrate judge. But he is incorrect to argue that the magistrate judge abused her discretion in rejecting that method here. We therefore AFFIRM.